John Thomas KYLE, Appellant,

v.

STATE of Iowa, Appellee.

No. 66881.

Supreme Court of Iowa.

July 21, 1982.

Patricia N. Fetzer, Iowa City, and Sarah Megan, John Wunder, Kim Dulin and Dennis Shields, Student Legal Interns, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and David H. Correll, County Atty., for appellee.

McGIVERIN, Justice.

Applicant John Thomas Kyle appeals from the district court's summary dismissal under section 663A.6, The Code, of his application for postconviction relief. We consider the following issues based on his 1964 plea of guilty to an open charge of murder, section 690.1, The Code 1962, and the subsequent determination of first-degree murder under section 690.4, The Code 1962:

1) Whether postconviction court erred in summarily dismissing the application for postconviction relief based on the following claims of applicant:

a) the plea of guilty to the open charge of murder was not knowing, intelligent and voluntary;

b) his confession was unlawfully obtained;

c) trial court relied on hearsay evidence in determining he acted with premeditation;

d) he was denied his due process right to be found guilty only upon offenses charged by the State;

e) he was denied effective assistance of counsel;

f) his trial as an adult instead of a juvenile without a prior juvenile hearing, solely on the basis of the charge against him, violated his rights of due process and equal protection of the law.

2) Whether postconviction court erred in finding that applicant's resistance to the notice of intent to dismiss was untimely and refusing to consider the resistance in its ruling.

3) Whether postconviction court erred in failing to consider or allow applicant's motion for leave to amend his application for postconviction relief.

Our resolution of these issues requires affirmance in part and reversal in part of postconviction court's summary dismissal of the application for postconviction relief and we remand this case for an evidentiary hearing on several issues. All code references are to the 1981 Code unless otherwise indicated.

Because Kyle did not take a direct appeal from the 1964 entry of judgment of first-degree murder, we will briefly set out the facts of the crime giving rise to the present

action.[1] The body of nineteen year old Diane Gable was found in the Waterloo home of her parents on June 1, 1964. She had been choked, beaten and fatally stabbed in the heart with a knife. During the investigation of the homicide the Waterloo police were informed by a neighbor that he had heard that Kyle had recently been in a fight with the victim's boyfriend.

The police contacted Kyle in regard to the alleged fight, and he went to the police station to discuss it. During the discussion Kyle confessed that he had killed the victim. Kyle was subsequently charged with the murder of Diane Gable in violation of section 690.1, The Code 1962.[2] He pled guilty to an open charge of murder. On October 26, 1964, after a hearing to determine his degree of guilt pursuant to section 690.4, The Code 1962,[3] trial court entered judgment finding Kyle guilty of premeditated first-degree murder. He was sentenced to life imprisonment. § 690.2, The Code 1962.

On September 26, 1979, Kyle filed an application for postconviction relief in Black Hawk District Court. § 663A.3. Pursuant to court order, Kyle filed a supplementation of record on December 31, 1980, setting forth by affidavit facts within his personal knowledge which supported his claims for relief. §§ 663A.3, .4.

On February 18, 1981, postconviction court filed an order indicating its intent to dismiss Kyle's application for postconviction relief pursuant to section 663A.6. The postconviction court based its decision on Kyle's application for postconviction relief and a record consisting of the transcript of the October 5, 1964, degree of guilt hearing and the information and judgment in connection therewith, and the December 31, 1980, supplementation of record.[4] Kyle was given until March 24, 1981, to file his reply to the proposed dismissal.

On March 24 Kyle served his "resistance to court's notice of intent to dismiss" by placing it in a United States Post Office depository in Iowa City. The resistance was file stamped by the Black Hawk County clerk of court on March 25. Kyle also served by mail on March 24 a motion for leave to amend his application for postconviction relief and a copy of the proposed amendment, which were filed stamped on March 25.

By order filed March 30, 1981, the court dismissed Kyle's application for postconviction relief because he was "not entitled to postconviction relief and no purpose would be served by any further proceedings herein." § 663A.6. The court found that applicant had made no reply by March 24, 1981, and that the filings made were "delinquent and not entitled to consideration." Kyle's motion to reconsider was overruled and he appealed to this court. We granted limited remand, requesting that postconviction court consider applicant's contention that his resistance to the notice of intent to dismiss was timely filed. Postconviction court responded to the limited remand by filing an order again finding Kyle's reply untimely and elaborating on the reasons for the dismissal of the application for postconviction relief.

We now turn to the merits of Kyle's claims.

1. Kyle has, however, been before this court before. In *State v. Kyle*, 271 N.W.2d 689, 690 (Iowa 1978), we affirmed his conviction for escape in violation of section 745.1, The Code 1977, from the Iowa State Penitentiary at Fort Madison.

2. Section 690.1, The Code 1962, provided: "Whoever kills any human being with malice aforethought, either express or implied, is guilty of murder."

3. Section 690.4, The Code 1962, provided in pertinent part: "[I]f the defendant is convicted upon a plea of guilty, the court must, by the examination of witnesses, determine the degree [of murder], and ... must enter judgment and pass sentence accordingly."

4. A deposition of one of Kyle's co-counsel in the 1964 murder hearing was not admitted into evidence before the postconviction court. We do not consider the factual disclosures of that deposition in our resolution of the issues in this case nor do we find that postconviction court relied on the deposition in its summary dismissal of Kyle's application for postconviction relief.

I. *Summary dismissal of application.* Kyle contends postconviction court erred by summarily dismissing his application for postconviction relief and failing to allow an evidentiary hearing.[5] We agree with this contention, but only with regard to certain of his claims for relief. Some of his claims for relief were properly dismissed.

■ Section 663A.6 provides two statutory methods for summary disposition of postconviction relief applications. *Watson v. State*, 294 N.W.2d 555, 556 (Iowa 1980); *Hines v. State*, 288 N.W.2d 344, 346 (Iowa 1980). Postconviction court in the present case used the first method, "summary disposition on the court's initiative." *Hines*, 288 N.W.2d at 346.

Summary disposition by the first statutory method is not proper if a material issue of fact exists. § 663A.6 (second paragraph, final sentence). ["Disposition on the pleadings and record is not proper if a material issue of fact exists."] Thus we must determine by examining the pleadings and record before us whether any material issue of fact exists that militated the reception of evidence by trial court, as provided in section 663A.7. *Watson*, 294 N.W.2d at 556.[6] "Whether a genuine issue of material fact exists, so as to preclude summary disposition, turns on whether reasonable minds could draw different inferences and reach different conclusions from them." *Boge v. State*, 309 N.W.2d 428, 430 (Iowa 1981).

On the other hand, "We find no need for trial court to afford petitioner a hearing on allegations which directly contradict the record, unless some minimum threshold question of credibility appears." *State v. Boge*, 252 N.W.2d 411, 414 (Iowa 1977).

We must, therefore, analyze Kyle's various grounds for postconviction relief to determine which raise issues of material fact and must be remanded for an evidentiary hearing pursuant to section 663A.7, and which do not raise issues of material fact and were thus properly dismissed by the court.

■ A. *Knowing, intelligent and voluntary guilty plea.* In his application for postconviction relief, Kyle asserted, as a ground for relief pursuant to section 663A.2, that his 1964 guilty plea was not knowing, intelligent and voluntary. He pled two supporting reasons for this contention in his application:

A. Applicant was denied effective assistance of counsel by his counsel's failure to advise the Applicant that a confession elicited from him on the day of his arrest would not be admissible at trial.

B. The decision to plead guilty was not made by the Applicant but by his parents and his attorney, without meaningful consultation and advice.

In his December 31, 1980, supplementation of record Kyle further stated, by affidavit, "I was not the one who decided I should plead guilty. Rather, that decision was made by my parents and counsel without meaningful consultation with and advice to me."

We discuss Kyle's effective assistance of counsel and confession claims in divisions I(E) and I(B), respectively, *infra*, and see no need for analysis of these claims here. Rather, we focus on whether the claim, that his parents and counsel made the decision that Kyle should enter the guilty plea, raises a material issue of fact preventing summary disposition of the claim. We find that it does.

A criminal defendant's right to due process of the law under U.S.Const. amend. XIV is violated unless the record discloses that

---

5. The State concedes, and we find, that Kyle's application for postconviction relief is not barred by section 663A.8. *Cf. Hinkle v. State*, 290 N.W.2d 28, 31 (Iowa 1980) ("Inadequacy of appellate counsel, if established, would provide 'sufficient reason' to permit [applicant] to raise this issue now although he did not do so on direct appeal").

6. Section 663A.7 has been amended to provide for the location of hearings on applications for postconviction relief where the applicant seeks relief under section 663A.2(6) as amended (reduction of sentence under section 246.39 or .43 has been unlawfully forfeited). 1981 Iowa Acts, 69 G.A., ch. 198, § 3.

he "voluntarily and understandingly entered his pleas of guilty." *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274, 280 (1969). In *State v. Boone*, 298 N.W.2d 335, 337 (Iowa 1980), we said:

> A defendant who enters a plea of guilty waives several constitutional rights.[7] For the waiver to be valid under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, there must be an intentional relinquishment of known rights or privileges. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). If a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of constitutional guarantees of due process and is therefore void. *McCarthy v. United States*, 394 U.S. 459, 463–64, 89 S.Ct. 1166, 1169, 22 L.Ed.2d 418, 423–24 (1969). The defendant must have a full understanding of the consequences of a plea before constitutional rights can be waived knowingly and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274, 279–80 (1969).

In his application and supplementation of record, Kyle claimed that he did not make the decision to plead guilty. The State says that the following colloquy, during the October 5, 1964, degree of guilt hearing, directly contradicts Kyle's claim:

> THE COURT: Do you have confidence in your attorneys in this case, Mr. Kyle?
>
> KYLE: Yes, sir.
>
> THE COURT: Have you consulted with them?
>
> KYLE: Yes, sir.
>
> THE COURT: Have they advised you concerning the seriousness and importance of this charge?
>
> KYLE: Yes, sir.
>
> THE COURT: And they have told you what the penalty is, namely, that you subject yourself to the possibility of either life imprisonment or the death penalty?
>
> KYLE: Yes, sir.
>
> THE COURT: And have you consulted with your parents concerning this plea?
>
> KYLE: Yes, sir.
>
> THE COURT: And is this your plea?
>
> KYLE: Yes, sir.
>
> THE COURT: A plea of guilty in this case?
>
> KYLE: Yes, sir.

We cannot agree with the State's interpretation that Kyle's claim is directly contradicted by the guilty plea colloquy. We find that there is a "minimum threshold question of credibility." *Boge*, 252 N.W.2d at 414. Reasonable minds could draw different inferences and reach different conclusions on the intelligent and knowing nature of Kyle's guilty plea based upon the record and his claims as set forth in his application and the supplementation of record. *Boge*, 309 N.W.2d at 430. We hold that a material issue of fact exists on the alleged ground for postconviction relief that Kyle's guilty plea was not knowing, intelligent and voluntary in violation of his rights of due process under the law. The court should not have summarily dismissed this ground, which is remanded for evidentiary hearing.[8]

B. *Unlawfully obtained confession.* The second ground for postconviction relief raised by Kyle in his application was that his confession was obtained in violation of his constitutional rights. Several legal arguments and factual claims were advanced in support of this ground for relief but *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and *Zacek v. Brewer*, 241 N.W.2d 41 (Iowa 1976), make a

7. "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers." *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279 (citations omitted).

8. The deposition of Kyle's 1964 co-counsel, if introduced, or direct testimony along parallel grounds, would seem to bear on this issue on remand.

detailed discussion of these claims unnecessary.

In *Tollett*, the Court said:

In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.

411 U.S. at 264, 93 S.Ct. at 1606, 36 L.Ed.2d at 241–42 (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 773 (1970)). Because *McMann v. Richardson*, *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), dealt only with challenges to the guilty plea itself, the court in *Tollett*, where no such challenge had been made, adopted the following principle:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

411 U.S. at 267, 93 S.Ct. at 1608, 36 L.Ed.2d at 243.

"A guilty plea is normally understood as a lid on the box, whatever is in it, not a platform from which to explore further possibilities." *United States v. Bluso*, 519 F.2d 473, 474 (4th Cir. 1975); *Zacek v. Brewer*, 241 N.W.2d at 49.

The fact that prior to the entry of his guilty plea on the advice of counsel petitioner was deprived of constitutional rights cannot afford him the relief sought ... unless, as stated in *Tollett*, he attacks "the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*."

*Zacek*, 241 N.W.2d at 50.

Thus, under *Zacek* and *Tollett*, Kyle's claim for postconviction relief on the ground that his confession was unlawfully obtained is subsumed under his attack on the guilty plea discussed in division I(A) and more specifically under his claim of ineffective assistance of counsel considered in division I(E). Postconviction court properly dismissed Kyle's application as to the issue concerning an illegally obtained confession.

C. *Hearsay evidence.* Kyle's third ground for postconviction relief was that trial court relied on hearsay evidence to determine his criminal intent in the slaying of Diane Gable. The allegedly hearsay evidence was comprised of statements made by Kyle to a psychiatrist, Dr. Billy Grimmer, during the course of a court-ordered psychiatric examination. We find that there is no issue of material fact as to whether trial court relied on hearsay evidence in its finding of premeditation and that postconviction court, therefore, was proper in its summary dismissal as to this ground.

After Kyle was arraigned in 1964, his mental condition was evaluated by Dr. Grimmer after a psychiatric examination in Iowa City. At the degree of guilt hearing, the defense called Dr. Grimmer to testify whether, in his opinion, Kyle could entertain the requisite intent for premeditated murder. During the direct examination of Dr. Grimmer, the defense began to delve into the history of Kyle from approximately 1960 until the date of the murder and shortly thereafter. This history had been related to Dr. Grimmer by Kyle in an interview

where Kyle had been administered sodium amytal ("truth serum"). Dr. Grimmer related this history from 1960 until the night before the killing. Then the prosecution objected. At that juncture the following colloquy occurred:

COUNTY ATTORNEY: If I could at this point, Your Honor, to save time, interpose one objection and ask for the purpose of this hearing that it be interposed after any question dealing with or eliciting information relative to the history that the defendant Thomas Kyle gave to this witness in either Sodium Amytal interviews or direct interviews and that objection would be that this is hearsay and self-serving declarations.

THE COURT: The testimony ... will not be received for the purpose of showing the truth of the matter asserted, as such it is hearsay and a self-serving declaration, but will be admitted solely for the purpose of indicating the clinical history obtained by the doctor and the significance which he attaches to it. The objection to that extent is overruled. It is sustained insofar as it objects to the use of these relations for the truth of the matter asserted.

Dr. Grimmer continued his testimony on Kyle's history, relating the rest of Kyle's statements during the interview. He concluded that, in his opinion, Kyle was legally sane, but that his ingestion of alcohol on the night of the slaying combined with his sociopathic character to prevent him from premeditating the murder.

On cross-examination the following dialogue occurred:

THE COURT: Now directing your attention, and the Court is particularly interested in the period following the attempted strangulation of the deceased, he left her, he went into an adjoining room, according to a statement which he has given us, and picked up a knife from a drawer and returned and stabbed her. Now, at the time he went into that other room and picked up the knife, are we safe in saying that he had an intent to kill, at that time?

DR. GRIMMER: He stated he wanted to be sure she was dead before he could look at her.

THE COURT: In other words, that was his purpose then to kill when he picked up that knife because he wanted to be sure she was dead?

DR. GRIMMER: Those are his words, yes.

THE COURT: I have difficulty in view of your analysis here in determination, and this of course is our ultimate question, what was in his mind when he picked up that knife. Wasn't he in effect during that very brief moment planning the death of this girl, thinking about it, taking necessary steps to do it and carrying it out. Now, I'll lay myself open here, I haven't thought long enough on these questions you have raised, but how would you distinguish that state of mind from premeditation, think about what you are going to do, ponder. In the law we don't require that you have to ponder for any length of time, you just have to think about it, we say, for just an instant. If you are unable to speculate on what's in his mind at that time, why, I can conceive that it might be beyond our skill.

DR. GRIMMER: All I have to go on is his one statement, that he wanted to be sure she was dead.

Kyle contends that the trial court relied upon hearsay evidence, as presented in the exchange with Dr. Grimmer, to prove the truth of the matter asserted and find that Kyle was guilty of willful, deliberate and premeditated murder. In his application for postconviction relief, Kyle contends that trial court must have relied on the allegedly hearsay statement because there was insufficient evidence otherwise presented on the issue to prove premeditation beyond a reasonable doubt. We cannot agree with this contention for two reasons. First, the statements related by Dr. Grimmer are not hearsay evidence but rather are admissions. In *State v. Miller*, 204 N.W.2d 834, 840 (Iowa 1973), we adopted the definition of hearsay provided in Fed.R.Evid. 801(c): " 'Hearsay' is a statement, other

than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We have also adopted Fed.R. Evid. 801(d)(2), which excludes admissions from the definition of hearsay. *State v. Kidd*, 239 N.W.2d 860, 864 (Iowa 1976); *State v. Hamilton*, 236 N.W.2d 325, 330 (Iowa 1975). A defendant's incriminating statements during a psychiatric examination are admissions. *See Collins v. Auger*, 428 F.Supp. 1079, 1082 (S.D.Iowa 1977), *aff'd following remand*, 577 F.2d 1107 (8th Cir. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979).[9]

■ Second, even if we considered the evidence to be hearsay, and not admissible under an exception to the hearsay rule, there was enough evidence outside the Grimmer statement to allow trial court to find that Kyle had premeditated the murder of Diane Gable. The confession of Kyle was admitted into evidence. In it Kyle stated he choked the victim until she fell to the floor of the living room and "I didn't think that she was dead so I went to the kitchen, got a knife out of the knife drawer" and returned to the living room to inflict the fatal stab wounds. A Waterloo police officer testified, without objection, to the same course of events. Gilbert R. Clark, the pathologist who performed the autopsy on the body of the victim, testified that Gable had been choked and bitten such that her face bled and swelled before she was fatally stabbed. Thus, when trial court reached its conclusion of premeditation, it was not in reliance solely on the alleged hearsay evidence from Dr. Grimmer. In fact, in the October 26, 1964, judgment, trial court indicated that the truth of the matter asserted in the Grimmer testimony was not important:

*Our question is; was there a point in this sequence of events when the defendant premeditated the death of Diane Gable.* It is sufficient if a fixed design or determination to kill existed in the mind of the defendant if only in the moment of time before the commission of the act which resulted in death. If we grant that the initial assault by strangulation was the product of impulsive reaction provoked by the last words of the deceased, did this impulse carry the defendant through his subsequent acts without pause for thought? ... Thereafter he leaves the body, walks several steps into the kitchen where he secures a knife among several in a drawer, returns to his victim and stabs her to death. It is a straightforward, purposeful series of acts unlike his previous incredible acts of violence to the body: it has a possible motive and makes possible sense. *He thought she was alive and he may have desired to destroy a witness or he may have intended, as he told his psychiatrist, only to prevent her from saying the irritating words on the next day. The motive or the logic involved are immaterial.* It is inconceivable to this Court that the defendant during the period when he sought the knife, secured it and used it, did not even for a moment plan to kill the deceased. At this point it is no defense for the defendant that he was less able than normal persons to weigh consequences, that he was deficient in conscience, or that his object in killing was irrational; it is enough that he knew what he was doing and planned to do what he in fact accomplished, and this the Court finds that he did. . . .

---

**9.** This case is distinguishable from *Collins*, where it was said: "it is fundamentally unfair to use defendant's incriminating admissions to a psychiatrist during a psychiatric examination as part of the prosecution's case to establish his guilt. . . . The fundamental unfairness of the introduction of such evidence violates defendant's right to due process. . . ." 428 F.Supp. at 1082. The grounds of distinction are that here the evidence is not part of the prosecution's case, it was introduced by the

defense and only restricted as to use after an objection by the prosecution. Second, under either the harmless error standard or the more rigorous standard set out in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (evaluate omission in context of entire record), we conclude that the other evidence of premeditation "was substantial to a degree that would negate any possibility of actual prejudice. . . ." *See Collins v. Auger*, 577 F.2d 1107, 1110–11 (8th Cir. 1978).

Accordingly, the Court finds the defendant guilty of murder in the 1st degree.

(Emphasis supplied.)

We find that trial court did not rely on hearsay evidence in its determination of premeditation. Thus, postconviction court was correct in its summary dismissal of Kyle's third ground for postconviction relief.

D. *Guilt upon offenses charged.* In his application for postconviction relief, Kyle contends, as a further ground for relief, that his right to due process of law was violated when trial court entered judgment finding him guilty of first-degree murder in violation of sections 690.1 and .2, The Code 1962. The crux of his argument is that the State limited itself to a felony-murder theory of first-degree murder in its opening statement at the 1964 hearing and that, therefore, he could not be found guilty of premeditated murder. We find no authority for this proposition and determine that no issue of material fact has been generated on it. Therefore, postconviction court properly dismissed this fourth ground for relief.

Kyle was charged by trial information with violation of section 690.1, The Code 1962 (open charge of murder). He was adjudged guilty of section 690.1, and his degree of guilt was determined to be in the first-degree in violation of section 690.2. The State said, in its opening statement: "It is the intention of the State that this was a murder in the first degree and that

this murder was perpetrated in an attempt to rape . . . [or] committed in a perpretration of mayhem." The defense, in its opening statement, stressed that it would be defending on a theory of diminished responsibility aimed particularly at premeditation, willfulness and deliberateness. In this light, the State's emphasis on felony-murder appears to be no more than a matter of strategy to reduce the effectiveness of the defendant's diminished responsibility defense. The trial information was never amended,[10] and the State in fact continued to attempt to prove premeditation during the degree of guilt hearing. Kyle's defense was primarily aimed at premeditated murder.[11]

■ The State was under no obligation to specify in the information whether it would proceed on a theory of felony-murder or premeditation. *Cf. State v. Hochmuth,* 256 Iowa 442, 445, 127 N.W.2d 658, 659 (1964) (unnecessary for information to allege the means by which offense of receiving stolen goods committed; State chose to specify means, therefore "defendant could not properly be convicted upon a finding it was committed by means not alleged"). Since the State did not do so, it could attempt to prove defendant guilty as charged under either or both felony-murder or premeditation theories. Kyle was not misled by the State's opening statement. We find no constructive amendment of the information. *See Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 257 (1960); *Watson v. Jago,* 558 F.2d 330,

---

10. Thus, this case is unlike *Dunn v. United States,* 442 U.S. 100, 104, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743, 749 (1979), where in response to defendant's motion for a bill of particulars the prosecution indicated it would rely on the "inconsistent declarations" method of proof for a violation of 18 U.S.C. § 1623 and not a different method. The court said: "To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused." *Id.* at 106, 99 S.Ct. at 2194, 60 L.Ed.2d at 750.

11. Although we do not find there has been a variance in this case, to the extent there was

any variance between the offense charged and the proof adduced at the degree of guilt hearing, it has not been prejudicial to Kyle. Generally a variance is "not material where the allegations and proof substantially correspond, or where the variance is not of a character which could have misled the defendant at the trial, provided that it is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." 41 Am.Jur.2d *Indictments* § 262, at 1039–40 (1968); *see, e.g., United States v. Schoenhut,* 576 F.2d 1010, 1021–22 (3d Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978); *State v. Hoover,* 219 Or. 288, 317, 347 P.2d 69, 83 (1959).

334–36 (6th Cir. 1977). There was no modification in the elements of the crime charged via the State's opening remarks. *Watson,* 558 F.2d at 334. The defendant was found guilty as charged. Postconviction court properly dismissed this fourth ground for postconviction relief.

■ E. *Effective assistance of counsel.* Kyle's fifth ground for postconviction relief was that he was denied effective assistance of counsel with regard to the events surrounding the 1964 judgment. We agree that there is a material issue of fact concerning this issue and reverse postconviction court's dismissal on this ground and remand for an evidentiary hearing.[12]

Kyle contends the following list of items comprises ineffective assistance of counsel in violation of his rights under the U.S. Const. amends. VI and XIV:

1) Trial counsel failed to move for a bill of particulars;
2) Trial counsel confused the nature of the State's charges against Kyle;
   a) Trial counsel failed to move for a directed verdict;
   b) Trial counsel mistakenly relied on a legally irrelevant defense;
   c) Trial counsel failed to object to prejudicial hearsay testimony;
3) Trial counsel failed to object to the admission of Kyle's confession;
4) Trial counsel was hampered in the representation of Kyle by a conflict of interest.
5) Trial counsel failed to adequately advise defendant of his right to appeal.

In *Watson v. State,* 294 N.W.2d 555, 556 (Iowa 1980), we said:

> When counsel's performance is put in issue, as it is here, an evidentiary hearing on the merits of the complaint will ordinarily be required. Such a hearing affords the parties an opportunity to adversarily develop all of the relevant circumstances attending counsel's performance, including those circumstances and consid-erations which may be pertinent but are not a part of the criminal trial record. (citation omitted). We apply this policy in this case.

Kyle has pled, and stated by affidavit, sufficient facts to generate an issue of material fact on the ground of relief premised upon ineffective assistance of counsel. Postconviction court erred in dismissing Kyle's application as to this ground and the case must be remanded for an evidentiary hearing thereon.

■ F. *Trial of juvenile as an adult.* Kyle's sixth ground for postconviction relief was that his trial as an adult, without a prior juvenile hearing, and solely on the basis of the charge against him violated his rights of due process and equal protection of the law. We disagree and conclude postconviction court's summary dismissal of this ground was correct.

At the time of Kyle's 1964 conviction he was a juvenile, aged 16. Generally, offenses committed by juveniles were processed under chapter 232, The Code 1962, "Care of Neglected, Dependent, and Delinquent Children." However, section 232.1 provided:

> This chapter shall not apply to any child who is accused of an offense which is punishable by life imprisonment or death, but shall otherwise apply to all children who are not mentally retarded and who are under eighteen years of age and who are not inmates of any state institution.

Section 232.20 similarly provided, in part: "When there is an indictment or a conviction in the district court of any delinquent child of an indictable offense, the district court may, before judgment, if the punishment be not imprisonment for life, or death, transfer the cause to juvenile court."

Since the offense Kyle was charged with was punishable by life imprisonment or death, §§ 690.2 and .3, The Code 1962, the district court had jurisdiction over his trial. To support his contention that the statutory

---

12. It is in connection with this claim that the deposition of Kyle's 1964 co-counsel, or testimony to the same effect, would have been most useful in resolving the various items of alleged ineffective assistance.

scheme violates equal protection and due process, Kyle cites *People v. Brian R.*, 78 Misc.2d 616, 356 N.Y.S.2d 1006 (Sup.Ct. 1974), aff'd, 47 A.D.2d 599, 365 N.Y.S.2d 998. In *Brian R.* the court analyzed, under due process and equal protection theories, a New York statute which correlated the availability of youthful offender treatment to the offense charged and not the conviction. 78 Misc.2d at 617–20, 356 N.Y.S.2d at 1008–10. The court found:

> "Under the due process challenge, the restriction must fall because it gives conclusive weight to the untested allegations of the indictment. By tying the availability of Youthful Offender treatment to the indictment, without regard to whether the Class A felony charge is sutained by a verdict is to give constitutionally impermissible significance to the ex parte grand jury accusation.... Ultimately, of course, the penalties prescribed for particular offenses must depend upon the crime of which the defendant is convicted, not the offense with which he was originally charged."

*Id.* at 619, 356 N.Y.S.2d at 1010. The court also found the statute unconstitutional under the equal protection clause because there "can be no rational basis for treating differently youths who have been convicted of the same offense merely because one of them had originally been charged with a higher grade of offense." *Id.* at 619–20, 356 N.Y.S.2d at 1010.

Although *Brian R.* offers some support to Kyle's position, it is contrary to the rule of law in an overwhelming majority of jurisdictions. These jurisdictions uphold statutes, on due process or equal protection grounds, which either exclude juveniles who commit certain offenses from juvenile court jurisdiction or give the prosecutor discretion on whether to try the juvenile as an adult or as a juvenile. *E.g., Lane v. Jones*, 626 F.2d 1296, 1297–1300 (5th Cir. 1980) (Georgia statute), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981); *Woodard v. Wainwright*, 556 F.2d 781, 782–87 (5th Cir. 1977) (Florida Statute), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978); *Russell v. Parratt*, 543 F.2d 1214, 1215–17 (8th Cir. 1976); *United States v. Quinones*, 516 F.2d 1309, 1311 (1st Cir.), *cert. denied*, 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975); *Cox v. United States*, 473 F.2d 334, 335–37 (4th Cir. 1973) *(en banc), cert. denied*, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1974); *United States v. Bland*, 153 U.S.App.D.C. 254, 258–62, 472 F.2d 1329, 1333–37 (1972) *(en banc), cert. denied*, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973); *Myers v. District Court*, 184 Colo. 81, 85–86, 518 P.2d 836, 837–38 (1974); *State v. Ayers*, 260 A.2d 162, 170–71 (Del.1969); *Prevatte v. Director*, 5 Md.App. 406, 411–12, 248 A.2d 170, 173–74 (1968); *Davis v. State*, 204 So.2d 270, 278 (Miss. 1967), *rev'd on other grounds*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *cf. Long v. Robinson*, 316 F.Supp. 22, 27–30 (D.Md.1970) (exception to Maryland statutory scheme trying 16 and 17 years olds as juveniles, which tried 16 and 17 year olds arrested in Baltimore as adults, violative of due process and equal protection), *aff'd*, 436 F.2d 1116 (4th Cir. 1971).

We find that sections 232.1 and .20, The Code 1962, are constitutional under equal protection and due process of the law. There is no issue of fact with regard to the manner in which he was tried under these statutes. Therefore, there can be, and we find, no material issue of fact in regard to this sixth ground for postconviction relief. Postconviction court was correct in summary dismissal of it.

II. *Timely resistance to notice of intent to dismiss.* Kyle contends postconviction court erred in finding his resistance to the February 18, 1981, notice of intent to dismiss was untimely and in refusing to consider the resistance in its March 30, 1981, ruling. We find this issue has been rendered moot in view of the evidentiary hearing required under division I.

III. *Leave to amend.* Kyle contends that postconviction court erred in failing to consider and allow his motion for leave to amend the application for postconviction relief. We agree that postconviction court should have considered the motion for leave

to amend and we order that the motion be considered upon remand. We do not reach the issue of whether leave should have been granted.

Postconviction court found that the motion for leave to amend had been filed on March 25, 1981, and was therefore untimely and not entitled to consideration under the February 18 notice of intent to dismiss which required filing by March 24. Kyle served by mail his motion for leave to amend and a copy of the proposed amendment on March 24. They were file stamped on March 25. Under the principles enunciated in *Fryer v. Hamilton*, 278 N.W.2d 5, 7–8 (Iowa 1979), the service of the motion for leave to amend on March 24 tolled the time requirement for filing as of that date. Therefore, we find the motion was timely and should have been considered by postconviction court.

Iowa R.Civ.P. 88, which applies to chapter 663A proceedings pursuant to section 663A.7, provides in part: "Leave to amend . . . shall be freely given when justice so requires." We leave it to postconviction court to decide whether or not to grant the motion for leave to amend on remand when it considers the motion.

In summary, we affirm postconviction court's summary dismissal in part, but we also reverse in part and remand. Because of the existence of material issues of fact, an evidentiary hearing is required on those grounds for postconviction relief discussed in divisions I(A) and I(E). Postconviction court must consider, as timely filed, Kyle's motion for leave to amend the application for postconviction relief. We have considered all of the grounds raised in applicant's brief, whether or not discussed herein, and find them without merit except as noted above.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.