**John Thomas KYLE, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 84–434.

Supreme Court of Iowa.

March 20, 1985.

Patricia N. Fetzer and Mark McManigal, Student Legal Intern, of the University of Iowa College of Law Prisoner Assistance Clinic, for appellant.

Thomas J. Miller, Atty. Gen., Sherie Barnett, Asst. Atty. Gen., and James D. Coil, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

Applicant John Thomas Kyle appeals from the district court's dismissal of his application for postconviction relief challenging his conviction and sentence for murder in the first degree in violation of Iowa Code section 690.1 (1962). In 1964 appellant pleaded guilty to an open charge of murder. Following a degree-of-guilt hearing, he was convicted of first-degree murder and was sentenced to life imprisonment.

Shortly after 9:30 a.m. on June 1, 1964, the body of 19-year-old Diane Gable was discovered lying on the floor in the living room of her parents' home in Waterloo. Her body was partially nude. Two stab wounds were found on the left side of her bare chest; the knife had entered her heart, causing her death. Blood had drained from her nostrils; she had been bitten on her nose, and her upper lip was lacerated. Her neck area showed signs of manual strangulation which did not cause her death. The tissue surrounding the external opening of her vagina was bruised prior to her death, and there was a tear in her vagina that the pathologist opined was caused by a blunt object.

The Waterloo police were called following the discovery of the body. While investigating the death they were informed that Kyle had been at the Gable home on the night Diane had been seen last and he had been involved in a fight. Shortly after 11:00 a.m. two officers went to the supermarket where Kyle worked and asked him to accompany them to the police station, which he did since he did not have a vehicle at the supermarket.

After his arrival at the police station and questioning, Kyle made admissions concerning Gable's death. Kyle was 16 years of age at the time. Although his parents, who worked nearby, were called and went to the police station, they were not allowed to see Kyle until after his statement had been typed.

Kyle's parents employed an attorney friend, Mr. Edward Gallagher, to represent Kyle throughout the proceedings. On Mr. Gallagher's suggestion his senior partner, Mr. Paul Kildee, was also retained by the Kyles to represent their son. Kyle underwent psychiatric evaluation at the University Hospitals. The psychiatrist found that he was not legally insane and he was competent to cooperate in his defense.

On October 5, 1964, Kyle pleaded guilty to an open charge of murder. There was no plea agreement. Kyle now asserts that he wanted to go to trial, but decided to plead guilty after an emotional meeting with his parents to save his parents further pain and to avoid the death penalty. The court found insufficient evidence of rape or attempted rape to support a felony-murder charge, but found that Kyle had premeditated the murder. Upon Mr. Gallagher's statement that he did not believe there were grounds for appeal, Kyle chose not to appeal.

On September 26, 1979, Kyle filed an application for postconviction relief which was dismissed on March 30, 1981. This court found error in the summary dismissal. *Kyle v. State*, 322 N.W.2d 299 (Iowa 1982). We found that a material issue of fact had been raised on two issues: (1) whether Kyle's guilty plea was knowing, intelligent and voluntary; and (2) whether assistance of counsel had been effective.

Following a full evidentiary hearing on remand, the trial court denied Kyle's application. In its detailed finding of fact, the court found Kyle had made a knowing, voluntary and intelligent guilty plea to the murder change and that under the entire record Kyle's counsel was effective in that his counsel was competent and that all of the advice given Kyle was within the normal limits of competency.

On appeal Kyle challenges these findings. He claims that the decision to plead guilty was made by his parents and attorney without meaningful consultation and advice. He further maintains that his counsel failed to adequately advise him that a confession elicited from him would be inadmissible at trial. He further urges that his counsel failed to act effectively in

numerous respects which we will detail in the body of this opinion. Finally, Kyle claims denial of due process since he had the burden of disproving the requisite specific intent, based on a claim of intoxication.

I. *Guilty plea.* Kyle alleges that his conviction was invalid under the due process clause of the fourteenth amendment to the United States Constitution and article I, section 9 of the Iowa Constitution because his plea to an open charge of murder was not knowing, voluntary and intelligent. Kyle gives two reasons for this assertion. First, he claims the decision to plead guilty was made by his parents and attorney rather than himself. Second, he maintains his plea was defective because he was denied effective assistance of counsel through his attorney's failure to advise him that a confession elicited on the day of his arrest would be inadmissible.

A defendant who enters a plea of guilty waives several constitutional rights. For the waiver to be valid under the due process clause of the fourteenth amendment to the United States Constitution, there must be an intentional relinquishment of known rights or privileges. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). A guilty plea which is not both knowing and voluntary is violative of the due process guarantee. *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425 (1969). Later examination of a guilty plea proceeding based on a plea rendered with the advice of counsel focuses on the voluntariness of the plea and the competency of the attorney who rendered such advice. *McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763, 773 (1970). The merits of other claims of constitutional violations which occurred prior to the guilty plea will not be addressed. *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235, 243 (1973). Consequently, petitioner correctly limits his challenge to questions of voluntariness and incompetency of counsel.

In support of his claim that his plea was entered involuntarily, Kyle claims that he wished to go to trial but pleaded guilty following an emotional meeting with his parents. He maintains that he acquiesced and obediently pleaded guilty to save his parents from further distress. Primary support of his position came from his aunt, Dorothy Kyle, who testified that decisions in the case were made by his parents, together with his attorney, Gallagher, and then were relayed to Kyle. The record does not establish that Dorothy and her husband, Walter Kyle, had much involvement with the proceedings of the case. Dorothy and Walter were dissatisfied with the way the case was conducted and felt it should have been conducted their way. We find there is not a solid basis for Dorothy's testimony. Gallagher testified that, although he advised Kyle, the decision to plead guilty was Kyle's and Kyle never indicated he wanted a jury trial (which directly contradicts Kyle's testimony).

Kyle asserts the guilty plea also resulted from his and his parents fear that he would receive the death penalty if he went to trial. He now claims that his fear was irrational because no juvenile had ever been executed in Iowa. As Gallagher stated: "Whether it was a 40 percent chance or a 60 percent chance, you are just as dead as whether it was a 2 percent chance, so that I don't think statistically it made any difference." The pictures in this case were so grotesque, as was the coroner's description of the condition of the body, that a jury might have given Kyle the death penalty.

The trial court found that Kyle's testimony about an emotional meeting with his parents was not substantiated. The trial court further found that the evidence did not indicate Kyle's parents were making the decisions for Kyle. We agree with the trial court's determination in our de novo review and find that the plea was intelligently and voluntarily made. Nothing in the record indicates that Kyle was incompetent or not in control of his mental faculties. He understood the nature of the

charges and the consequences of the plea. The odds against a successful defense, in view of the facts of the case, combined with the higher possibility that a jury might impose the death penalty seemed to be the motivating factors for all concerned. Kyle simply failed to establish that his guilty plea was not intelligently and voluntarily made.

Kyle also attacks the voluntariness of his guilty plea because he was denied effective assistance of counsel. He claims his attorney failed to advise him that a confession elicited on the day of his arrest would be inadmissible.

Kyle relies on *Rinehart v. Brewer*, 561 F.2d 126 (8th Cir.1977), to support his claim that Gallagher was ineffective because of his failure to investigate the possibility of suppression of his confession. Kyle urges that he was only 16 and did not have the advice of parents and counsel when he signed the statement. He further claims that the confession was the fruit of an unlawful detention. When we are faced with claims that trial counsel was ineffective because of a failure to protect the client from an invasion of his constitutional rights, we must carefully separate the claims.

■■■ Once the defendant waives his right to a trial, which would provide the opportunity to litigate his constitutional claims, in order to take the benefits, if any, of a plea of guilty, the State has a right to expect finality in the conviction. *Lefkowitz v. Newsome*, 420 U.S. 283, 289, 95 S.Ct. 886, 889, 43 L.Ed.2d 196, 202 (1975). We only relitigate the constitutional infirmity in the context of determining whether counsel acted within the range of competence demanded of attorneys in criminal cases. The fact that the court might in retrospect hold a confession inadmissible in evidence does not justify the conclusion that the defendant's attorney was incompetent or ineffective. *McMann*, 397 U.S. 770, 90 S.Ct. at 1448, 25 L.Ed.2d at 773 (1970). To establish the claim of ineffective assistance of counsel, Kyle must establish that his counsel's performance did not fall with-

in the range of normal competency by showing: (1) counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) the deficient performance so prejudiced the defense as to deprive the defendant of a fair trial. *Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). We keep in mind the admonition of the Supreme Court in *Strickland* that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

When we judge the facts concerning the reasonableness of Gallagher's performance as counsel for Kyle, we must keep in mind the time sequence. The United States Supreme Court had decided *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), a few days after Kyle's confession, but before his guilty plea. The principles governing the admissibility of statements obtained from an individual subjected to custodial police interrogation were announced by the United States Supreme Court in 1969, in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), nearly two years later. There is little question that Gallagher had questions concerning the voluntariness of the confession. Kyle was only 16 and did not have the advice of parents or counsel. Gallagher testified about his investigation of the facts surrounding the confession, including the possibility that Kyle was under the influence of drugs at the time of the confession, and concluded that the confession probably could not be suppressed. He testified that the decision not to file a motion to suppress was made only after briefing the matter. At that point he determined the confession was voluntary and admissible. Kyle had disobeyed counsel's instructions to be silent; he had discussed the murder with other prisoners and two jailers. A deputy sheriff had obtained a sheet

of paper on which Kyle had written the following:

> Well, I was at a party, the other night, A friendly party and we turned down the lights, Well, after the party, I made a mistake, I killed a good friend, now what will be my fate? Yes, what will be my fate?

> Well, I was at a party, the other night, A friendly party and we turned down the lights, Oh, after the party, I made a mistake, I killed a good friend now what will be my fate.

> I hope they don't hang, for what I have done.

> But if the Lord wants me, then I will come, Oh, Yes, if the Lord wants me then I will come, Oh I will come.

█ This case is unlike the *Rinehart* case relied upon by Kyle. In *Rinehart* the court referred to several factors in finding ineffective assistance of counsel based on counsel's failure to pursue the possibility of suppression of a confession: defendant was a fifteen-year-old, immature juvenile, had had no previous police contact, was unable to communicate effectively, confessed after five hours of intensive questioning—at 3:00 a.m. without an attorney or his parents present, and there had been an illegal search. In *Rinehart* the court based its decision that counsel was ineffective, in regard to the confession, on his failure to investigate the possibility of suppression. 561 F.2d 132. Here, Gallagher did conduct an investigation, although he decided against a motion to suppress. Kyle was sixteen years old and was not an immature juvenile. He had had previous police contact due to an arrest for stealing an automobile and was able to communicate effectively. He confessed shortly after the investigation focused on him, after refusing the police officers' offer to contact his parents and indicating to the officers he did not want a lawyer. There was no illegal search.

In *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), involving a crime committed one month after the Gable murder, a fifteen-year-old minor who was arrested at 11:00 p.m., questioned for two hours, held overnight, and given only water in the morning confessed to a rape. His mother was notified between 3:30 and 4:30, but neither she nor an attorney saw the defendant prior to his confession. Counsel deemed this confession admissible and advised his client to plead guilty. The court found that, even if counsel was wrong in his assessment, this error was not sufficient to "disavow his [defendant's] admission in open court that he committed the offense with which he was charged." *Id.* at 797, 90 S.Ct. at 1462, 25 L.Ed.2d at 792. The court further stated: "[W]e think the advice he received was well within the range of competence required of attorneys representing defendants in criminal cases." *Id.* at 797–98, 90 S.Ct. at 1462, 25 L.Ed.2d at 792.

Kyle also urges that under *Escobedo* his confession was suppressible. In *Escobedo* the Supreme Court held that a defendant's sixth amendment rights were violated when he was questioned in custody and requested, but was denied, the assistance of counsel. 378 U.S. at 490–91, 84 S.Ct. at 1765, 12 L.Ed.2d at 986. Kyle, in this instance, was given the opportunity to contact his parents and a lawyer, which he rejected. Kyle was not an innocent young child, nor was he easily intimidated by officers or being questioned at the station. Gallagher pointed to these distinguishing factors in his testimony. In addition, as the State points out, the effect of *Escobedo* was uncertain until *Miranda* was decided about two years later.

█ In our de novo review we agree with the trial court decision that there was no showing of ineffective assistance of counsel. The decision not to seek a suppression hearing clearly seems to be a judgment call made by a competent attorney, especially since there is no reason to believe that a motion to suppress would have been successful. Counsel's decision to enter a plea of guilty without filing a motion to suppress required consideration of practical concerns as well as specialized knowledge of the law. He had to evaluate

the strength of the State's case and the likelihood of procuring a lesser sentence by pursuing a course of action which could be upset by pressing a technical defensive motion which in 1964 did not enjoy the popularity and chance of success it would a decade or two later. Additionally, Gallagher had the aid and advice of his senior partner who had extensive criminal defense experience, including several capital cases. We find that counsel's performance was not so deficient that he was not functioning as the counsel guaranteed by the Sixth Amendment. Moreover, if incompetence had in fact been shown, our review of the evidence indicates that Kyle's admissions to others concerning the killing would have been admissible. We find no showing of prejudice.

II. *Ineffective assistance of counsel.* Defendant also claims that he was denied ineffective assistance of counsel on several grounds. We shall review de novo each of those grounds under the principles announced in *Strickland.*

■ A. *Bill of particulars.* Kyle complains that Gallagher failed to move for a bill of particulars under Iowa Code section 773.5 (1962). We have no quarrel with Kyle's claim that a bill of particulars "does more than merely apprise the defendant of evidence which the prosecution will use against him." Gallagher was aware of all the evidence utilized by the State against his client through his own investigation and through his access to the State's file. Kyle has not proved what such a motion would have produced. He has not shown prejudice from the failure to file such a motion.

■ B. *Confusion concerning the nature of the State's charges against Kyle.* Kyle claims that Gallagher was confused about the charges against him because in the degree-of-guilt hearing the county attorney relied upon a felony-murder theory, while Gallagher's defense of Kyle was aimed at negating the specific intent requirement of premeditated murder by demonstrating diminished capacity. Kyle asserts that because Gallagher misunderstood the charges, he failed to move for

a directed verdict at the close of the State's case. We find no merit in these claims.

We held in *Kyle v. State,* 322 N.W.2d at 307, that "the State's emphasis on felony murder appears to be no more than a matter of strategy to reduce the effectiveness of defendant's diminished responsibility defense." Since the trial information was never amended and the State in fact attempted to prove premeditation during the degree-of-guilt hearing, the State could rely upon both theories, felony-murder and premeditated murder. *Id.*

■ We found in our earlier opinion that the court's finding of premeditation was supported by Kyle's confession and other evidence. We stated:

The confession of Kyle was admitted into evidence. In it Kyle stated he choked the victim until she fell to the floor of the living room and "I didn't think she was dead so I went to the kitchen, got a knife out of the knife drawer" and returned to the living room to inflict the fatal stab wounds. A Waterloo police officer testified, without objection, to the same course of events. Gilbert R. Clark, the pathologist who performed the autopsy on the body of the victim, testified that Gable had been choked and bitten such that her face bled and swelled before she was fatally stabbed. Thus, when trial court reached its conclusion of premeditation, it was not in reliance solely on the alleged hearsay evidence from Dr. Grimmer.

*Id.* at 306. Since we have found that counsel's failure to suppress the confession did not constitute ineffective assistance of counsel, there is no basis for the claim that counsel was ineffective in failing to move for a directed verdict. The pathologist's testimony also presents evidence of a time lapse between the first injuries and the fatal stabbing, circumstances which support premeditation. Gallagher's decision not to waste the court's time with a motion for a directed verdict under these circumstances was not so deficient as to deny Mr. Kyle effective assistance of counsel.

■ Kyle next urges that counsel misconstrued the law regarding the elements of rape by including an element of specific intent. Kyle has made no showing of prejudice on this issue, nor is he able to make such a showing because Kyle was acquitted of felony-murder.

Finally, Kyle asserts that the testimony of Dr. Grimmer concerning Kyle's statements about the homicide was prejudicial hearsay testimony and that counsel was ineffective in failing to object. Dr. Grimmer was called as a defense witness to support Kyle's diminised responsibility defense. The State objected to part of his testimony, asserting that it was self-serving hearsay. In response to the State's objection, the court ruled that the doctor would be allowed to repeat what Kyle had told him, but only for the purpose of demonstrating the basis of his opinion. During cross-examination the State asked Dr. Grimmer questions which allowed the doctor to testify that Kyle did not intend to rape Gable. Later, during redirect, the doctor testified that he did not believe Kyle premeditated the murder. Kyle now alleges that counsel allowed the trial court and the prosecutor to question Dr. Grimmer extensively, without objection, concerning the element of premeditation. The State urges that defense counsel allowed the witness to respond to the questioning of the prosecutor because the witness was a defense witness who was testifying to evidence helpful to the defendant.

■ We ordinarily do not find an adequate basis for relief when the claim of ineffectiveness concerns an attorney's decision regarding strategy or tactics. *State v. Wilkens*, 346 N.W.2d 16, 18 (Iowa 1984). When counsel makes a reasonable decision concerning strategy, we will not interfere simply because the chosen strategy is unsuccessful. *Id.* In summary, "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* — U.S. at —, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. Under these principles, we find that counsel was not ineffective. He made a judgment call concerning the effectiveness of this evidence in meeting the State's felony-murder theory and advancing the defense of no premeditation.

Additionally, we have already determined the trial court did not rely on alleged hearsay statements repeated by the doctor to establish premeditation. *Kyle,* 322 N.W.2d at 307. Thus, even if we were to assume incompetency here, Kyle has made no showing of prejudice.

C. *Confession.* Kyle also claims that counsel failed to adequately investigate the circumstances surrounding his confession and the applicable law; consequently, he failed to object to admissibility. In division I we have discussed this issue and found that counsel made an adequate investigation. There is no merit in Kyle's claim.

■ D. *Conflict of interest.* Kyle claims his representation was hampered by his counsel's relationship with his parents, which caused counsel to respond primarily to their concerns and interests. The trial court indicated that it had carefully reviewed this matter and specifically found that Gallagher and Kildee had advised the petitioner Kyle properly. The trial court found that their representation was effective and was within the range of normal competence. We agree with the trial court.

The record shows that Gallagher clearly established through his testimony that he considered Kyle to be his client and left decisions to Kyle. Upon review of the record, we find that the parents' concerns were the best interests of their child. Counsel's and Kyle's parents' primary concern appears to have merged with that of Kyle—to avoid a sentence of death by hanging. The claim that counsel violated his loyalty to Kyle has not been established.

■ E. *Appeal.* Kyle claims that his counsel informed him there were no grounds for an appeal and that his counsel failed to explain the meaning and consequences of a life sentence or the disadvantages and advantages of an appeal. Gal-

lagher testified he informed Kyle of his right to appeal, advised Kyle that he felt there were no grounds for appeal, and stated that if Kyle chose to appeal, he would represent Kyle on the appeal. Gallagher believed that the court's adjudication of first-degree murder was a factual determination which was supported by the evidence. Following our review of the record, we find that counsel's advice, as given in 1964, has not been shown to constitute ineffective assistance of counsel. Furthermore, no prejudice has been shown; Kyle has not established that the appeal would have been successful.

III. *Due process.* At issue in Kyle's degree-of-guilt hearing was whether, at the time of killing, Kyle was intoxicated and therefore did not form the requisite specific intent necessary for a finding of first-degree premeditated murder. Kyle claims that he was denied fourteenth amendment due process because the burden was placed on him to disprove specific intent due to intoxication. We found in *State v. Templeton*, 258 N.W.2d 380 (Iowa 1977), that defendant should not have the burden to disprove specific intent due to intoxication; however, this decision is not retroactive. *Hinkle v. State*, 290 N.W.2d 28, 35 (Iowa 1980). We decline Kyle's request to reverse *Hinkle*.

AFFIRMED.