Elbert James HINKLE, Appellant,

v.

STATE of Iowa, Appellee.

No. 63313.

Supreme Court of Iowa.

March 19, 1980.

James P. Cleary, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., Dan Johnston, Polk County Atty., and Michael Hansen, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McGIVERIN, and LARSON, JJ.

**REYNOLDSON, Chief Justice.**

This is another in a rising river of postconviction relief proceedings in which the competency of counsel who represented petitioner in the prior criminal action is put in issue. District court denied relief and petitioner Hinkle appeals. We affirm.

Hinkle's first-degree murder conviction was affirmed on appeal. *State v. Hinkle,* 229 N.W.2d 744 (Iowa 1975). The criminal trial transcript, made a part of this proceeding, discloses there was overwhelming evidence from which the jury could have found the following facts. Hinkle became angry because his girl friend, Patty Bradley, decided to return to her husband. He broke into Patty's home on the morning of the murder and stole the murder weapon. He called her the afternoon of the murder and said he was going to kill her. He obtained additional bullets for the gun, walked to Patty's home, and excited the neighborhood as he broke the front door down. Hinkle shot Patty seven times, then tried to rape her. Within five minutes after the murder the police found him hiding in the basement with human blood on his underpants and the murder weapon in his pocket.

In this postconviction proceeding Hinkle asserts (1) he was denied an adequate pretrial psychiatric examination to determine his sanity at the time of the offense and he was thereby denied due process, and because of ineffective appellate counsel this issue was not raised in the direct appeal; and (2) he was denied effective assistance of counsel at trial, evidenced by several specified failures.

*I. Burden of proof and judicial review.*

Ordinarily a proceeding under the Uniform Postconviction Procedure Act (chapter 663A, The Code) is at law and our review is not de novo. *Hines v. State,* 288 N.W.2d 344, 345 (Iowa 1980). But where, as here, the postconviction petitioner asserts violations of constitutional safeguards, we make our own evaluation of the totality of circumstances. *Lawson v. State,* 280 N.W.2d 400, 401 (Iowa 1979). This is the equivalent of a de novo review. *Kellogg v. State,* 288 N.W.2d 561, 563 (Iowa 1980), and citations.

The petitioner must shoulder the burden of proof to establish by a preponderance of evidence a claim of ineffective assistance of counsel. *Kellogg,* 288 N.W.2d at 563; *State v. Hicks,* 277 N.W.2d 889, 896 (Iowa 1979); *State v. Veverka,* 271 N.W.2d 744, 750 (Iowa 1978). The test is whether under all the circumstances counsel's performance was within the range of normal competency. *Cleesen v. State,* 258 N.W.2d 330, 332 (Iowa 1977). Such circumstances must include an affirmative factual basis demonstrating counsel's inadequacy of representation. *Id.* at 332.

The required examination should proceed while resisting, in the light of hindsight, the temptation to Monday morning quarterback the lawyer in the arena. Nor should the inquiry degenerate into a postmortem, microscopic dissection of each desperate effort of counsel to save a terminal case.

[E]ffective assistance of counsel does not mean successful. Rather, it denotes conscientious, meaningful legal representation wherein the accused is advised of his

rights and honest, learned and able counsel is accorded reasonable opportunity to perform his assigned task. Improvident trial strategy, miscalculated tactics, mistake, carelessness or inexperience do not necessarily amount to ineffective counsel. *Parsons v. Brewer,* 202 N.W.2d 49, 54 (Iowa 1972).

■ The right to effective assistance of counsel also applies to assistance of counsel on appeal. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The same standards applied to trial counsel competency should apply in measuring the competency of appellate counsel. *See Cleesen,* 258 N.W.2d at 332.

## II. *Adequacy of pretrial psychiatric examination.*

Trial counsel in the criminal case raised the issue of the adequacy of Hinkle's pretrial psychiatric examination. Hinkle now urges the alleged inadequacy denied him his right to a fair trial and due process of law as guaranteed by the fourteenth amendment.

Under our decisions this new ground cannot be raised in a postconviction relief proceeding unless Hinkle establishes by a preponderance of the evidence "sufficient reason" for not having raised the inadequacy issue on his direct appeal. *See, e. g., Armento v. Baughman,* 290 N.W.2d 11, 13 (Iowa 1980); *Redding v. State,* 274 N.W.2d 315, 317 (Iowa 1979); *Bledsoe v. State,* 257 N.W.2d 32, 33, 34 (Iowa 1977); §§ 663A.2, –.8, The Code. Multiple grievances of a convicted defendant should be submitted in a unitary action rather than piecemeal in successive actions. *Carstens v. Rans,* 210 N.W.2d 663, 664–65 (Iowa 1973).

Inadequacy of appellate counsel, if established, would provide "sufficient reason" to permit Hinkle to raise this issue now although he did not do so on direct appeal. *See State v. Masters,* 196 N.W.2d 548, 550 (Iowa 1972). *See also Horn v. Haugh,* 209 N.W.2d 119, 121 (Iowa 1973). We thus proceed to an examination of the totality of the circumstances under which the postconviction court's ruling was made, to determine if Hinkle has established by a preponderance of evidence the inadequacy of his counsel on appeal. If he was competently represented on appeal he cannot raise now the inadequacy of his pretrial psychiatric examination.

Hinkle's trial was set for January 22, 1973. On January 15 defense counsel filed an application to have him taken to the Security Mental Health Institute at Oakdale for examination and evaluation as to his competency to stand trial and to determine his sanity or insanity at "the time of the alleged incident." The next day defense counsel filed a motion for continuance, citing among other reasons the requested examination. Trial court first ordered the examination to be made at Broadlawns Hospital, Des Moines, but on January 17, "because of the number of patients and workload" at Broadlawns, ordered the sheriff to transport Hinkle to the Johnson County jail "for psychiatric evaluation [by Dr. Paul L. Loeffelholz] to determine if the defendant is competent to stand trial."

The examination was conducted January 18. Hinkle was first seen by psychologist Dr. Edwin Johnston, for an hour and fifteen minutes "at the minimum." He was administered an intelligence test which placed him on the low normal range. Dr. Johnston also administered the usual Gossit test employed for claims of brain damage, which was negative, and a draw-a-person test. There was no evidence of psychiatric disorder. Thereafter he was seen for about an hour and a half by Dr. Loeffelholz, who then spent an equal amount of time studying the record of Hinkle's case and relating that material to the direct interview.

January 18, Dr. Loeffelholz forwarded a letter to trial court outlining his examination and expressing his opinion Hinkle was "clearly" competent to stand trial and aid in his own defense. Two days later, apparently at the request of the trial court or assistant Polk County attorney, he wrote a second letter providing further factual findings relating to Hinkle's sanity at the time of the October 6, 1972, homicide. Dr. Loeffelholz stated,

Psychiatric evaluation clearly indicates that Mr. Hinkle has the capacity to know right from wrong and is able to form intent consistent with responsibility for his behavior.

There is no history which would support the belief that he was unable to know right from wrong on or about October 6, 1972.

Defense counsel raised the issue of the adequacy of the psychiatric evaluation by motion filed January 19 and by motions for new trial and in arrest of judgment.

Circumstances bearing on effectiveness of Hinkle's trial counsel should include his testimony at the postconviction hearing. Counsel stated that Hinkle made references to a boyhood hit on the head and, "He told me that he had blackout periods when he drank, and I assumed that the blackout periods . . . were in connection with his drinking," but explained that in nine meetings with his client before trial "he showed no indication of any mental problem or process—mental process deficiency whatsoever." Counsel indicated the application for examination was filed to try to get "leverage" for plea bargaining. There is an underlying inference it was also an attempt to buy time.

After reading Dr. Loeffelholz's report, counsel consulted a psychiatrist friend who told him the standard for these types of reports varied from doctor to doctor and he was unwilling to say it was not adequate. Counsel was led by this conversation to conclude he probably would not find anyone to challenge the examination. Based upon Dr. Loeffelholz's report and his experience with him as a witness, he knew the Doctor would say nothing to help Hinkle if called to the witness stand. As for raising the adequacy of the examination on appeal, defense counsel, who was also appellate counsel, testified Hinkle said that, "I was the lawyer and he would abide by my opinions." Counsel's practice was not to "shotgun" appeals and raise every conceivable issue:

I decided not to appeal it because I didn't think the record would support a—any serious look by the Supreme Court at the

issue because I didn't have an expert to go against Doctor Loeffelholz. . . . As it was, all I had was Mr. Hinkle saying he was examined for an hour and a half and, on the other hand, we had Dr. Loeffelholz's report from a qualified certified psychiatrist who is the head of the institution at Oakdale.

■ Our de novo review of all these circumstances, including the information counsel obtained from his psychiatrist friend, leads us to conclude Hinkle has not proved he had ineffective assistance of appellate counsel on the direct appeal. It follows Hinkle has not established "sufficient reason" for not having raised the issue of the inadequacy of his pretrial psychiatric examination on his direct appeal. Absent such a showing, Hinkle now is barred from raising the issue by chapter 663A, The Code, and cases interpreting those statutory provisions. *See, e. g., Carstens,* 210 N.W.2d at 665.

We therefore do not reach the merits of Hinkle's assertions relating to the adequacy of his examination. By so holding we do not intimate he has produced the required quantum of proof to show that his examination, under all the circumstances, was inadequate.

III. *Effective assistance of counsel at trial.*

Hinkle claims trial counsel's representation was ineffective in four respects: (1) his alleged failure properly to explore the defense of temporary insanity, (2) his decision to cross-examine the medical examiner regarding evidence of rape, (3) his failure to object to allegedly hearsay testimony by the victim's husband, and (4) his failure properly to object to an instruction placing the burden on Hinkle to prove his asserted defense of intoxication.

A. *Defense of temporary insanity.*

■ Hinkle argues trial counsel did not "promptly, adequately and thoroughly explore" an insanity defense. We are not persuaded this claim has any merit. Although Hinkle apparently complained of a

childhood head injury and "blackouts," we have already noted counsel's testimony that he understood the "blackouts" were associated with drinking, and his strong testimony he saw nothing to indicate Hinkle had a diminished mental capacity. Counsel's reaction was confirmed by the testimony of Dr. Loeffelholz at the postconviction hearing. Amnesia associated with heavy drinking is a common occurrence and not ordinarily associated with insanity. In direct refutation of Hinkle's claim his "blackouts" were not explored, Dr. Loeffelholz stated he did inquire into this area, that Hinkle admitted "he did do a fair amount of drinking," did not drink to "blackouts," but that while under the influence he "would have some foggy memory." Hinkle did tell Dr. Loeffelholz he had some bumps on the head while a child, but had no history of any medical attention and had never been hospitalized. Dr. Loeffelholz found no evidence of psychiatric illness or brain damage.

In assessing trial counsel's effectiveness, we note that the appointment of a psychiatrist for an examination at State expense is discretionary with the district court judge. Trial court is to make an objective evaluation, taking into consideration all relevant factors, including but not limited to (a) defendant's prior medical history as to any mental or emotional instability, (b) his past conduct, and (c) defendant's apparent mental state and demeanor as observed by the trial judge. If the request is found to be frivolous or *without underlying factual support,* a denial is in order. *State v. Williams,* 243 N.W.2d 658, 660 (Iowa 1976); *State v. McGhee,* 220 N.W.2d 908, 913 (Iowa 1974). Under this standard, trial counsel's decision (if a conscious one) to delay the application in hope of finding additional factual support is within the range of normal competency. Other than Hinkle's own vague and unsupported suggestions, there was no indication either at trial or on the postconviction hearing that he had suffered a head injury or had any traumatic residuals. A trial court's rejection of an application undergirded by stronger factual support was upheld in *State v. Williams,* 243 N.W.2d at 660–61.

Each of the decisions Hinkle relies on presents stronger facts to justify a holding that the defendant was denied effective assistance of counsel for failure to explore a criminal responsibility defense. In *United States v. Fessel,* 531 F.2d 1275 (5th Cir. 1976), there was a prior mental commitment and a diagnosis of schizophrenia during a prior incarceration. *United States v. Edwards,* 488 F.2d 1154 (5th Cir. 1974), presented stronger circumstances, including prior psychiatric problems and mental examination, and evidence of mental problems in conversations with counsel in a prior criminal case. The defendant in *Brooks v. Texas,* 381 F.2d 619 (5th Cir. 1967), previously had been committed to three different mental institutions and had attempted suicide twice. In *Brubaker v. Dickson,* 310 F.2d 30 (9th Cir. 1962), *cert. denied,* 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963), there was a prior medical history of head injury, defendant was "definitely seizure prone" and postconviction examination revealed organic brain damage.

Counsel in *Springer v. Collins,* 444 F.Supp. 1049 (D.Md.1977), cited by Hinkle, knew of the defendant's prior history of drug and alcohol abuse and his massive ingestion of those drugs prior to commission of the crime. At trial a deputy sheriff testified defendant was still incoherent 18 hours after the incident. In the postconviction proceeding the opinion of a medical witness was admitted to show that when the crime was committed defendant was insane. Upon further appeal, this decision was reversed in *Springer v. Collins,* 586 F.2d 329 (4th Cir. 1978), *cert. denied,* 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477 (1979), where the court observed:

> In our opinion, to grant relief in this case would be tantamount to establishing a *per se* rule that in any case in which there is evidence that a defendant was intoxicated by drugs or alcohol at the time of an alleged offense, the "range of competence" test would require that an attorney obtain a psychiatric examination of his client and consider the possibility, indeed the probability, of an insanity defense. We do not think that the Sixth Amendment requires this degree of cau-

tion and meticulosity on the part of counsel who has otherwise performed in a competent, conscientious and professional manner.

586 F.2d at 333.

When Hinkle was found in Patty Bradley's basement he offered excuses for his returning to the home and for being in the basement. Within a short time he was taken to the police station where without assistance he gave two telephone numbers to the police and made two calls. In one telephone conversation he reported "they got me in jail because I killed Pat," although at that point the police had only used the word "homicide" in his presence. There was nothing in these circumstances to support a claim of insanity. We hold Hinkle has not proved that trial counsel in this regard did not perform within the range of normal competency.

### B. Cross-examination of medical examiner.

■ During trial the State placed in evidence photographs of decedent's body which suggested she had been sexually attacked. The medical examiner, responding to a question which merely asked him what he did when he went to the room where the body was located, volunteered that the position of her clothing suggested to him she "might have been raped." With this photographic evidence and the examiner's statement before the jury, trial counsel's tactical decision to attempt to show there was no definitive proof of penetration or sperm was not an indicia of ineffective counsel. Improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel. State v. Killpack, 276 N.W.2d 368, 372 (Iowa 1979); Parsons v. Brewer, 202 N.W.2d at 54.

### C. Hearsay testimony

■ Hinkle argues his trial counsel failed to object properly to the allegedly hearsay testimony of the victim's husband relating what he had said in a telephone conversation with his wife earlier on the day of her death. In our prior opinion, State v. Hinkle, 229 N.W.2d at 748, we observed there

was no reversible error in the court's ruling admitting the evidence if the ruling was sustainable on any ground. We think it was. See our discussion, 229 N.W.2d at 748–49. Trial counsel may have made the belated objection for the benefit of the jury, with little hope of obtaining exclusion of the statement. Or he may have considered that direct evidence of the alleged threat would be more damaging. In any event, these circumstances do not establish counsel was so ineffective as to deprive Hinkle of any constitutional right.

### D. Intoxication instruction.

■ Finally, Hinkle contends he was denied effective assistance of trial counsel because the latter failed to object to jury instruction 21, imposing on Hinkle the burden to prove his asserted defense of intoxication by a preponderance of the evidence.

The instructions elsewhere placed on the State the burden to prove beyond a reasonable doubt all of the enumerated elements constituting murder in the first degree, including malice aforethought and either (1) specific intent, or (2) proof such act was willful and committed in the perpetration of rape, assault with intent to commit rape, or burglary.

We are not persuaded that counsel's failure to have his objection reported was ineffective representation. Further, it did not prejudice Hinkle. In giving stock instruction 21 trial court was following Iowa case law. See State v. Church, 169 N.W.2d 889, 893 (Iowa 1969). Although the same instruction was questioned by a minority of this court in State v. Buchanan, 207 N.W.2d 784, 788–92 (Iowa 1973), decided four months after Hinkle's murder trial, it was not until four years later that it was rejected in State v. Templeton, 258 N.W.2d 380, 382–83 (Iowa 1977).

■ Nonetheless, Hinkle argues in this appeal that instruction 21 deprived him of due process of law, and that we now should recognize that Templeton has constitutional underpinnings and apply it retroactively, citing Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); Patterson v. New York, 432 U.S. 197, 97 S.Ct.

2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); and *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It is questionable whether this argument was presented to trial court in this postconviction proceeding. Nonetheless, we shall consider it now.

In *Templeton,* 258 N.W.2d at 383, we declined to posit our holding on the due process clause of the fourteenth amendment or any provision of the Iowa Constitution. We are not confronted here with a statute which by statutory presumption or inference short-circuits the state's obligation to prove an essential element of the crime and moves the burden to the defendant, as in *Sandstrom, Mullaney,* and our own decision in *State v. Monroe,* 236 N.W.2d 24, 34 (Iowa 1975). *See also State v. Rinehart,* 283 N.W.2d 319, 321–23 (Iowa 1979).

Our former instruction on the intoxication defense is analogous to the New York law imposing on the defendant the burden of proving by a preponderance of the evidence his or her affirmative defense of extreme emotional disturbance, analyzed in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The *Patterson* court rejected the contention that the New York law violated the due process clause. It relied on and reaffirmed *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976), *dismissing for want of a substantial federal question* 351 A.2d 561 (Del.1976), and *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), holding that so long as the state was required to prove every element of the crime beyond a reasonable doubt, a rule imposing on the defendant the burden of establishing an affirmative defense of insanity, mental illness, or mental defect did not violate due process. *Accord, Stanley v. Mabry,* 596 F.2d 332, 333 (8th Cir. 1979); *Hill v. Lockhart,* 516 F.2d 910 (8th Cir. 1975); *Greenhaw v. Wyrick,* 472 F.Supp. 730, 736–37 (W.D.Mo.1979).

We do not perceive that the Supreme Court in any subsequent decision has retreated from what it said in *Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327, 53 L.Ed.2d at 292:

We . . . will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required

. . . .

Our *Templeton* decision turned on considerations of a proper and consistent state policy, not constitutional due process concerns. We followed our prior decisions relating to the burden of proof on other affirmative defenses, decided on common law and not constitutional grounds. *See State v. Thomas,* 219 N.W.2d 3, 5 (Iowa 1974) (insanity); *State v. Fagan,* 190 N.W.2d 800, 802 (Iowa 1971) (entrapment); *State v. Ebelsheiser,* 242 Iowa 49, 58, 43 N.W.2d 706, 712 (1950) (self-defense). There is nothing in our case law which requires the rule in *Templeton* to be applied retroactively.

It may be true that a due process pronouncement falling under the *Mullaney* and not the *Patterson* rule will receive retroactive application. *See Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). But even the *Hankerson* court noted retroactivity may be nullified by "the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." 432 U.S. at 244 n.8, 97 S.Ct. at 2345–46, 53 L.Ed.2d at 316. In this case there was no valid objection to jury instruction 21. We have already found trial counsel under the circumstances was not ineffective in not pursuing an objection.

We find no due process violation relating to this jury instruction, nor any error which requires us to set aside petitioner Hinkle's conviction.

Trial court's judgment is affirmed.

AFFIRMED.