**James Thomas JOHNSON, Appellee,**

v.

**STATE of Iowa, Appellant.**

No. 92–294.

Court of Appeals of Iowa.

Nov. 30, 1992.

Bonnie J. Campbell, Atty. Gen., Roxann M. Ryan, Deputy Atty. Gen., and James R. Wilson, County Atty., for appellant.

Linda Del Gallo, State Appellate Defender and Andi S. Lipman, Asst. State Appellate Defender, for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

SCHLEGEL, Judge.

The State appeals a district court ruling granting James Johnson's application for postconviction relief. The State contends the district court erred in determining Johnson's trial counsel rendered ineffective assistance by failing to object to certain testimony.

On July 10, 1987, the State charged James Johnson by amended trial information with three counts of second-degree sexual abuse. At trial, the following exchange occurred, without objection, between the prosecutor and a State's witness:

> Q. Ms. Harlan [defense counsel] asked you about whether children can make accusations as to sexual abuse. Do you have any opinion with relation to Lora and Kora? A. Yes I do.
>
> Q. What would that opinion be? A. My opinion is that they are telling the truth and that they are credible.

The jury convicted Johnson on two of the three charges. The district court then entered judgment and sentenced Johnson to consecutive terms of imprisonment not to exceed twenty-five years each. The supreme court affirmed Johnson's convictions on further review in *State v. Johnson*, 445 N.W.2d 337 (Iowa 1989).

On October 12, 1989, Johnson filed an application for postconviction relief. He alleged his trial counsel rendered ineffective assistance by failing to object to the above testimony, which he claimed was in direct violation of the supreme court's decision in *State v. Myers*, 382 N.W.2d 91 (Iowa 1986).

At the postconviction hearing, Johnson's trial counsel testified that while she was not familiar with *Myers* she was aware that the challenged testimony was improper. She maintained, however, that she chose not to object to such testimony because it would detract from her theory of defense. She stated that her theory was to undermine the social worker's credibility by demonstrating that the worker had not noticed any signs of sexual abuse in her long relationship with the family until the allegations against Johnson arose. Counsel also pointed out that it was her practice to raise very few objections before the jury.

On January 22, 1992, the district court entered its ruling on the application for postconviction relief. The court ruled that Johnson's trial counsel rendered ineffective assistance by failing to object to the challenged testimony either at trial or in a pretrial motion in limine. The court noted that the testimony was elicited solely to bolster the testimony of the alleged victims. The children's testimony apparently was the only link between the defendant and the sexual abuse.

The State appeals, contending trial counsel's actions were justifiable in light of the theory of defense. Johnson responds, claiming the State has waived error on the issue of whether Johnson was prejudiced by counsel's alleged failure since the State did not argue prejudice during Johnson's postconviction trial or appeal.

■ Ordinarily, our review of postconviction relief proceedings is for errors of law. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). However, when a postconviction petitioner asserts violation of constitutional safeguards—such as ineffective assistance of counsel—we make our own evaluation based on the totality of the circumstances. This is the equivalent of de novo review. *Id.*

■ Our ultimate concern in claims of ineffective assistance is with the "fundamental fairness of the proceeding whose result is being challenged." *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984)). Ineffective assistance is measured by whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93; *see Schertz v. State*, 380 N.W.2d 404, 408 (Iowa 1985).

■ In order for the appellant to prevail, the record must indicate (1) counsel failed to perform an essential duty and (2) prejudice resulted therefrom. *State v.*

*Hrbek*, 336 N.W.2d 431, 436 (Iowa 1983). In evaluating counsel's performance, we presume that counsel acted competently. *See Risdal*, 404 N.W.2d at 131.

■ In the present case, the postconviction trial court concluded that Johnson's trial counsel was ineffective by not objecting to testimony by a social worker that, in the social worker's opinion, the complainant children were truthful and credible. We affirm. The social worker's opinion testimony that the complainant children were credible witnesses who were telling the truth clearly violates the supreme court's holding in *Myers*.

In *Myers* the defendant appealed his conviction and sentence for indecent contact with a child because the State's expert was permitted to testify, over defendant's objection, that children almost never lie about sexual abuse. The *Myers* court reversed the conviction and remanded the case for a new trial after concluding the trial court abused its discretion in admitting the challenged expert testimony, thereby depriving the defendant of a fair trial. The court determined the expert opinions in the case had the same effect as directly opining on the truthfulness of the complaining witness, and the court held, "we conclude that expert opinions as to the truthfulness of a witness is (sic) not admissible pursuant to [Iowa Rule of Evidence] 702." *Id.* at 97. The court explained:

> The ultimate determination of the credibility or truthfulness of a witness is not "a fact in issue," but a matter to be generally determined solely by the jury.... A witness is not permitted to express an opinion as to the ultimate fact of the accused's guilt or innocence. [Citation omitted]. In this case the trial court admitted expert testimony relating to the truthfulness of the complaining witness. We believe the effect of the opinion testimony was to improperly suggest the complainant was telling the truth and, consequently, the defendant was guilty. We conclude the opinion testimony crossed that "fine but essential" line between an "opinion which would be truly helpful to the jury and that which

merely conveys a conclusion concerning defendant's legal guilt." [Citation omitted.]

*Id.* at 97–98.

In the present case the social worker directly opined on the truthfulness and credibility of the complaining witnesses, and defense counsel failed to object. The court in *State v. Tracy*, 482 N.W.2d 675 (Iowa 1992), faced a similar situation. There the defendant appealed his conviction of third-degree sexual abuse after the State's expert witness testified, "there are probably no more than two or three children per thousand who come forth with such a serious allegation who are found later to be dishonest." *Id.* at 678.

In *Tracy* the supreme court remanded the case for the purpose of making a record on the issue of ineffective assistance of counsel for failure to timely object to this and other testimony. After hearing evidence, the trial court found that counsel was not ineffective, and we affirmed. Upon further review, the supreme court reversed and remanded for a new trial after concluding:

> We note that the admission of [the expert's] testimony concerning the truthfulness of [the complainant's] testimony is in violation of our holding in *State v. Myers*, 382 N.W.2d 91, 97–98 (Iowa 1986). However, we choose not to rest our conclusions in the present case upon the *Myers* violation alone.

> \*    \*    \*    \*    \*    \*

> The State's suggestion that Tracy's trial counsel may have intentionally allowed [the expert] to testify so as to cross-examine him regarding a seemingly inconsistent statement in his report ... is simply not tenable. The collective prejudicial impact of [the expert's] testimony in conjunction with that given by the others clearly outweighs any favorable testimony that could reasonably have been anticipated in the course of [the expert's] cross-examination. Finally, we conclude that any argument that defense counsel failed to object so as to avoid calling the jury's attention to [the expert's] unfavorable testimony is unrea-

sonable in light of our position that the mere admission of such evidence is reversible error; this proposition applies with equal force to the hearsay testimony given.... In short, we find that Tracy's counsel failed to perform an essential duty in failing to make a timely objection to the testimony indicated above.

In the instant case, the State advances arguments similar to those advanced by the State in *Tracy*. Here the State claims defense counsel's election not to object to the social worker's testimony was a strategic decision. It claims defense counsel purposely permitted the social worker to testify about the complainants' truthfulness and credibility so that defense counsel could discredit this same testimony during cross-examination. In addition, the State advances defense counsel's testimony that, as a general rule, she refrains from lodging objections as further justification for her claimed trial strategy in the present case. We find these contentions to be without merit just as the supreme court has done before us.

We find defense counsel's contention that objecting to the opinion testimony would have detracted from her strategy to be entirely without merit. We agree with the district court that defense counsel's claimed trial strategy did not require counsel to remain mute when an opinion regarding the complainants' truthfulness was being elicited. This is particularly true in light of the fact that the only evidence the State offered to connect the defendant to the alleged sexual abuse was the testimony of the two complainants.

With the credibility and truthfulness of the alleged victims being the main point upon which this case revolved, a reasonable probability existed that but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Tracy*, 482 N.W.2d at 680 (citing *State v. Hildebrant*, 405 N.W.2d 839, 841 (Iowa 1987)). Specifically, the defendant was prejudiced at trial when the social worker informed the jury that the two com-

plainants "are telling the truth and that they are credible." This conclusion is solidified by the fact that the State elicited this opinion immediately prior to calling the complainants to the witness stand.

Because defense counsel's failure to object to this opinion testimony was deficient and resulted in prejudice to the defendant, we affirm the district court's ruling granting the defendant's application for postconviction relief.

AFFIRMED.

OXBERGER, C.J., concurs.

HABHAB, J., dissents and files an opinion.

HABHAB, Judge (dissenting).

I respectfully dissent. I would reverse the postconviction trial court's ruling granting Johnson's application for postconviction relief.

That court concluded Johnson's trial counsel was ineffective when she did not object to testimony by a social worker that, in the social worker's opinion, the children were truthful and credible. However, when I take into consideration the strategic decisions employed by defense counsel throughout the trial, I am unable to agree that this failure to object, standing alone, is sufficient grounds for the granting of postconviction relief. In doing so, I want to make it clear at this juncture that if it was not part of a justifiable defense strategy I would quickly reverse, and likewise if a timely objection had been made and overruled, I would reverse on appeal. But the results of this case must rise or fall on the justifiableness of trial strategy.

"A claim of ineffective assistance of counsel must be premised on more than simply questionable or unsuccessful trial tactics." *State v. Risdal*, 404 N.W.2d 130, 133 (Iowa 1987) (citing *Kyle v. State*, 364 N.W.2d 558, 565 (Iowa 1985); *State v. Losee*, 354 N.W.2d 239, 243 (Iowa 1984)). Additionally, the Iowa Supreme Court has held it is rare to find ineffective assistance of counsel because of failure to preserve error. *State v. Halstead*, 362 N.W.2d 504, 508–09 (Iowa 1985).

The record in the case at bar reflects that trial counsel's actions were justifiable. Defense counsel had roughly ten years experience, had previously had training in criminal defense, and had handled criminal cases in the past.

As part of its strategy, the defense showed Johnson did not get along well with the older daughter and that over the years the daughter and her family had made frequent complaints to the DHS. During those years, no claims of sexual abuse were made to any of the social workers. Counsel sought to show that, if there was sexual abuse, DHS workers with frequent contact with the family would have recognized the signs or symptoms of abuse, or the children would have reported the abuse to the DHS investigators. In addition, counsel claimed there were factual inconsistencies in the stories given by the children and emphasized the medical testimony was based on a very new, largely untested methodology. Finally, counsel bolstered the defense with local character witnesses, who said Johnson was an upstanding citizen and therefore unlikely to be a child molester.

As to the specific claim regarding testimony about the trustfulness of the victims, trial counsel stated she was unfamiliar with *State v. Myers*, 382 N.W.2d 91 (Iowa 1986), but knew about the guiding principles of that case. She testified she was "aware that [an] expert witness can't give the ultimate—opinion on the ultimate issue in the trial." She knew that an objection might lie. Yet she chose, as a matter of strategy, to not object to the testimony by the social worker because she did not think it was the most effective way to attack that witness. Counsel testified as follows:

> With Ms. Gauger [the social worker] my position is that she didn't know what she was talking about, it wouldn't be consistent at the same time to say, yes, but we don't want you to hear what she has to say. That's giving her credibility that I didn't want to give her. So I took the position that who cares what she says, she doesn't know what she's talking about. She's dealt with this family a number of years, in the past she did not

determine that there was any abuse taking place, now she says it's obvious and has been going on all the time. If she didn't know about it then how does she know about it now. If I had tried to keep the jury from hearing what she had to say I think it would have hurt your basic approach to her, which is she doesn't know what she's talking about.

This type of approach should not lead to a finding of ineffective assistance of counsel.

> [T]he term "ineffective assistance of counsel" does not mean that every mistake in judgment or error in trial strategy by an attorney serves to deprive an accused of a constitutional right. *Long v. Brewer*, 253 N.W.2d 549, 558 (Iowa 1977). Trial tactics may dictate that counsel forego certain avenues of defense in pursuit of the perceived best interests of the accused. *See Tollett v. Henderson*, 411 U.S. 258, 268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 244 (1973); *State v. Rand*, 268 N.W.2d [642] at 649 [ (Iowa 1978) ].

*State v. Veverka*, 271 N.W.2d 744, 750 (Iowa 1978) (citations omitted). In the case at bar, we cannot be certain there was a mistake in judgment. Counsel felt that her handling of the social worker on the stand was very effective. She testified as follows:

> I think when I was cross examining her and bringing up the point that she had had all this contact with the family over the years and why does she know that this was occurring now whereas in the past she didn't know, she was the mental health professional that came and visited the family regularly, she was very flustered and practically in tears, by the time we got to redirect I thought we had done enough damage and let her get off of that.

Thus, in many respects it can be argued that counsel's strategy was successful. But even if it were unsuccessful, that fact alone is insufficient to prove ineffective assistance of counsel.

In a similar case, *Risdal,* defense counsel elicited testimony that indicated child sexual abuse victims do not lie. The *Risdal* court found no ineffective assistance of counsel and stated the following:

Whether twenty-twenty hindsight tells us trial counsel was wise or unwise in selecting this strategy for cross-examination, common sense and experience teach that the strategy was well within the range of reasonable professional competence. *See State v. Wilkens,* 346 N.W.2d 16, 19 (Iowa 1984) (not ineffective assistance for counsel to make sound tactical decision to emphasize self-defense rather than diminished capacity, then stay that course in preparing and presenting case to jury); *State v. Newman,* 326 N.W.2d 788, 795 (Iowa 1982) ("We have refused to assume the role of Monday morning quarterback in condemning counsel's judgment in choosing between what are frequently equally hazardous options available to him.")

*Risdal,* 404 N.W.2d at 133–34. *See also Schrier v. State,* 347 N.W.2d 657, 661 (Iowa 1984); *Karasek v. State,* 310 N.W.2d 190, 192 (Iowa 1981).

The real issue is not whether defense counsel's actions were successful, but whether they were "justifiable." *Pettes v. State,* 418 N.W.2d 53, 56–57 (Iowa 1988). In the case at bar, counsel's actions were justifiable. Her strategy to discredit the testimony of the DHS worker was a valid strategy, and although it did not result in an acquittal, it was still a reasonable defense.

For us to say the strategic defense tactics were not justified serves to second-guess the trial strategy of Johnson's trial attorney. He should not be granted a new trial merely because the trial strategy failed. He has had his day in court and was represented by a competent attorney who had to take into consideration what the result might be in the event her tactics failed.

There is one other reason why I do not believe postconviction relief should be granted. The jury had the entire picture before it concerning the three young girls who were victims of this crime. At the time of the incident in question, the three girls were fourteen, eleven, and nine years of age.

The defendant was charged with three counts of sexual abuse involving the two younger girls. The case was submitted to the jury which returned a verdict of guilty on two counts of sexual abuse in the second degree.

The main complaint at the postconviction hearing was the testimony of an expert witness. But the jury was instructed that it could accept or reject the testimony of the experts. We of course do not know what, if any, weight the jury gave to the expert witness's testimony, but we do know the jurors can and do use their own observations, common sense, and experience.

I would reverse the postconviction trial court's ruling. I would deny Johnson's application for postconviction relief.