# IN THE COURT OF APPEALS OF IOWA

No. 17-1126
Filed October 24, 2018

**TONY LEWIS GRIDER,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M.

Lekar, Judge.

An applicant appeals from the dismissal of his application for postconviction

relief. **AFFIRMED.**

Eric W. Manning of Manning Law Office, P.L.L.C., Urbandale, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee State.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Tony Grider appeals the dismissal of his application for postconviction relief filed after his 2011 convictions for conspiring to manufacture a controlled substance and/or manufacturing a controlled substance (more than five grams of methamphetamine); possession of ephedrine and/or pseudoephedrine with the intent to manufacture a controlled substance; possession of ether with the intent to manufacture a controlled substance; and possession of marijuana, in violation of Iowa Code section 124.401(1)(b), (4), and (5) (2009). On appeal, Grider argues his postconviction-relief counsel provided ineffective assistance in failing to ensure the district court addressed all of his claims, including claims his trial counsel provided ineffective assistance.

## I. Background Facts and Proceedings.

In Grider's direct appeal, we found the following facts:

In May of 2011, the Black Hawk County Sheriff's deputies conducted a "trash rip" at Grider's residence. Deputies found several Sudafed packages stuffed inside a cigarette box, plastic tubing, syringes and syringe caps, and plastic baggies. Inside one of the baggies was a bent spoon with black burn marks. Also found was a letter addressed to Grider and a paycheck bearing his name. A search warrant was obtained for Grider's residence.

Grider lived in the home with other individuals. Grider and two other persons were present in the home when the search warrant was executed. During the search of the house, investigators found a meth pipe, marijuana, and other drug related paraphernalia in Grider's bedroom. When investigators found the detached garage locked, they asked Grider about a key to the garage. Grider did not respond. Investigators entered the garage through a window. During the search of the house, the key to the garage was found on a key ring with other keys inside the pocket of a coat which was with other items in a clothes basket located in Grider's bedroom.

During the search of the garage, investigators discovered items consistent with the manufacture of methamphetamine inside a shop vac. The items included plastic bags containing receipts, lithium battery packaging, pseudoephedrine blister packaging, coffee

filters and used filters, and a Gatorade bottle containing sludge. Other items commonly used in the manufacture of methamphetamine were also found in the garage.

*State v. Grider*, No. 11-2086, 2013 WL 541638, at *1 (Iowa Ct. App. Feb. 13, 2013).

A jury convicted Grider in December 2011, and he was sentenced to twenty-five years on one count and fifteen years on each of the other counts, to be served concurrently. Grider brought a direct appeal, arguing his trial counsel was per se ineffective for waving the reporting of closing arguments, the trial court erred in admitting evidence of his prior manufacture of methamphetamine, and the trial court applied the wrong standard in reviewing his motion for a new trial. Grider also made thirty-three pro se claims. Our court affirmed Grider's conviction and found "his [pro se] 'arguments' are waived and warrant no relief" because his pro se brief did not comply with the rules of appellate procedure. *Id.* at *6–7.

Grider filed a pro se petition for postconviction relief in April 2013. He filed an amended application for postconviction relief in June 2013 through counsel, alleging his trial counsel failed to allow him to participate in his own defense, failed to depose several witnesses, failed to investigate, and several other claims. In July 2013, Grider's counsel withdrew and he filed a pro se amended application. In October 2013, Grider again obtained counsel and filed a subsequent amended petition. In July 2014, Grider filed a pro se amendment, alleging a witness planted the keys to the garage in his room. In April 2015, Grider's counsel withdrew and substitute counsel was appointed.

In January 2017, a hearing on Grider's application for postconviction relief was held. During the course of the hearing, the district court determined Grider's

issues could be classified as alternative theories that Grider alleges his trial counsel was ineffective for failing to adequately or strategically pursue. The crux of Grider's theory of defense is that his roommates were manufacturing methamphetamine in his locked garage without his knowledge and that his roommates were working with law enforcement to set up Grider.

The district court denied Grider's application for postconviction relief, finding Grider did not prove that his trial counsel's failure to investigate or call certain witnesses was a breach of an essential duty or that prejudice resulted.

Grider appeals.

## II. Standard of Review.

Postconviction proceedings are generally reviewed for correction of errors at law. *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). "When the basis for relief implicates a violation of a constitutional dimension, our review is de novo." *Id.*

## III. Discussion.

On appeal, Grider claims the postconviction-relief court failed to address all of his claims. He argues "there was no specific finding of fact other than a broad dismissal which included multiple claims." At the conclusion of the postconviction-relief hearing, the court presented to Grider's counsel six claims it believed to be inclusive of all issues raised. Grider's counsel agreed those six claims incorporated each issue raised, and the district court later made a ruling on those six claims.

A postconviction relief court must consider all claims raised before it, both those raised by counsel and those raised pro se. *See Gamble v. State*, 723

N.W.2d 443, 446 (Iowa 2006). "Despite the requirement of section 822.7 [(2013)] that the district court make specific findings of fact and conclusions of law as to each issue, we have said that substantial compliance is sufficient." *Id.* "Even if the court does not respond to all of the applicant's allegations, the ruling is sufficient if it responds to all the issues raised." *Id.* Here, we find there were several issues raised, pro se or through prior counsel, that the postconviction-relief court did not address.

However, Grider did not file an Iowa Rule of Civil Procedure 1.904(2) motion or any other motion requesting the district court make a ruling on a specific issue it failed to address. Instead, Grider argues his postconviction-relief counsel was ineffective for failing file a motion requesting the court address to all of his claims. For Grider to prevail on his argument that his postconviction-relief counsel was ineffective for failing to file a rule 1.904 motion, he must show that one or more of the claims the court failed to rule on would have been successful. "Ineffective-assistance claims require a showing by a preponderance of the evidence both that counsel failed an essential duty and that the failure resulted in prejudice." *State v. Coleman*, 907 N.W.2d 124, 141 (Iowa 2018) (citation omitted). "A showing that the error 'conceivably could have influenced the outcome' of the proceeding is not enough." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012). "Rather, the effect must be affirmatively proven by a showing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (citations omitted). Here, because none of the claims the court did not explicitly address would have proven successful for Grider

or changed the outcome of the postconviction-relief hearing, Grider is not prejudiced by his counsel's failure to file a rule 1.904 motion.

Several of the claims not addressed by the court are not cognizable claims. Grider's initial postconviction application alleged his roommates were agents of the local drug task force who were sent to move in with him and set him up for methamphetamine manufacture; the keys to his detached garage—where the methamphetamine manufacturing operation (meth lab) was found—were planted in his room; his roommates were pulled over, found with drugs on them, and agreed to become informants to set up Grider; and after Grider's arrest, a friend visited Grider's residence and saw evidence of continued methamphetamine manufacture in the garage, indicating the person responsible for the meth lab was someone other than Grider. Grider's amended application made through counsel alleges he was not present at or a participant in methamphetamine manufacture. Another subsequent amendment claims Grider's "requests to depose alleged 'victims' was not addressed by the court or raised by counsel." These claims do not identify evidence that Grider's trial counsel could have or should have presented to support his alternate theories, and we do not have a record on which to evaluate them.

Grider made thirteen further claims regarding his trial counsel's ineffectiveness that were not explicitly addressed in the postconviction relief court's ruling. First, Grider argues his trial attorney knew the pseudoephedrine pills found in the meth lab were purchased by Grider's roommate but failed to address the issue at trial. He also claims his attorney failed to obtain information from the pseudoephedrine log identifying the purchaser of pills found at the meth lab until

the day before trial. While the record does not reveal when Grider's trial counsel obtained the pseudoephedrine log, his trial counsel knew at the time of the trial who purchased the pills found in the garage; Grider's counsel explained the pills found in the garage were purchased by a roommate in his opening statement and referred to that fact several times throughout the trial. The evidence in the record contradicts Grider's claim. Further, there is no evidence in the record the prosecution failed to turn over the pseudoephedrine log in a timely manner.

Second, Grider's trial counsel failed to challenge the admissibility of the garbage collected as evidence. Grider argues the evidence collected in the garbage should not have been admitted because it could have been possessed by any resident of the household. He also argues collecting the garbage was illegal because the garbage was not on the curb, but near his house, and was not collected on his regular garbage pickup day. Conflicting evidence was presented at trial. A defense witness testified the garbage was picked up on a Monday, when the regular garbage collection day was Tuesday, but did not testify as to whether the garbage was on the curb. An officer who conducted the trash pull testified the garbage was on the curb when it was collected but did not testify as to whether the garbage was collected on the usual collection day. "The constitutionality of a trash pull depends upon 'whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable.'" *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012); *see also State v. Henderson*, 435 N.W.2d 394, 397 (Iowa Ct. App. 1988). Because Grider has not presented evidence that he had an expectation of privacy in his garbage, we cannot say his trial counsel was ineffective for failing to suppress the evidence.

Third, Grider argues State rebuttal witness Dana Dempsey should have been deposed and "effectively impeached." Grider testified at his jury trial that he did not know how to manufacture methamphetamine and did not "mess with dope at all. Period. No pot. Nothing." Dempsey was introduced as an impeachment witness and testified that he had previously manufactured methamphetamine with Grider and Grider knew how to manufacture methamphetamine. Grider does not make any assertions as to what a deposition by his counsel would have revealed or how Dempsey could have been impeached. "When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). Because there is no evidence in the record suggesting how Dempsey could have been impeached, we cannot say whether his trial counsel was ineffective.

Fourth, Grider argues his trial counsel failed to make a motion for a new trial with the correct standard that the verdict was contrary to law or evidence, making the weight-of-the-evidence standard inapplicable. Because Grider does not explain how the verdict was contrary to law or evidence and he has not identified how "competent representation probably would have changed the outcome," we cannot consider this claim. *See id.*

Fifth, Grider argues his trial counsel did not make sufficient motions at trial to preserve for appeal grounds to exclude Iowa Rule of Evidence 5.404(b) matters. Grider has not identified what specific character evidence he believes his counsel

should have challenged. His claim is overly broad, and we cannot consider it. *See id.*

Sixth, Grider alleges all the people who lived with him at the time of his arrest should have been deposed, called at trial as hostile witnesses, and cross-examined by Grider's trial counsel. The postconviction-relief court addressed Grider's claims regarding deposing and calling his roommates to testify, but it did not explicitly address Grider's contention his counsel should have presented the testimony of his roommates as "hostile witnesses." The postconviction-relief court found many of his roommates would have refused to testify or would not have testified favorably for Grider.

Seventh, Grider argues he should not have testified at trial and his trial counsel failed to adequately inform him of the consequences of testifying. Grider's trial counsel was deposed in preparation for the postconviction-relief hearing and testified he had discussed with Grider the possibility of Grider testifying twice. He convinced Grider not to testify both times and was surprised when Grider insisted on testifying the day of trial. Trial counsel cannot make the decision whether to testify; the record demonstrates trial counsel advised Grider on the decision. *See Ledezma*, 626 N.W.2d at 146 ("The decision whether or not to testify belongs to the defendant, and the role of counsel is to provide advice to enable a defendant to make the decision."). We cannot say his trial counsel was ineffective.

Eighth, Grider alleges his trial counsel refused to allow him to participate in his defense and rejected the defense requested by him despite evidence supporting that defense. Grider's trial counsel argued to the jury the meth lab could have belonged to anyone who lived in Grider's house at the time of the arrest.

Grider's trial counsel testified in his deposition for the postconviction application he presented the defense Grider had asked him to present. Counsel acknowledged he failed to argue one facet of Grider's proposed defense, that he was set up by drug task force agents who moved into his home, because the theory was "farfetched" and he "didn't think the jury would buy it." "[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Id.* at 142. "Improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel." *Hinkle v. State*, 290 N.W.2d 28, 34 (Iowa 1980). "When counsel makes a reasonable tactical decision, this court will not engage in second-guessing." *Fryer v. State*, 325 N.W.2d 400, 413 (Iowa 1982). "Selection of the primary theory or theories of defense is a tactical matter." *Lamasters*, 821 N.W.2d at 866. We do not find Grider's trial counsel ineffective on this claim.

Ninth, Grider argues his trial counsel "failed to consult with and hire a defense expert that specializes in drug prosecutions where several other persons are known by state agents to have access to the premises of alleged manufacture, sale and or distribution of illegal drugs." Grider does not assert what the expert would have stated or how an expert's testimony would have affected the result obtained below. This allegation is too general in nature to allow us to address it here. *See Dunbar*, 515 N.W.2d at 15; *Schertz v. State*, 380 N.W.2d 404, 412 (Iowa 1985).

Tenth, Grider argues the State was a participant in the conspiracy to manufacture methamphetamine by the definition of conspiracy in the Iowa code

and he cannot be charged with conspiracy if the State is a participant. There is no evidence in the record to suggest the State was a participant or that Grider's roommates were agents of the local drug task force.

Eleventh, Grider argues a private investigator should have been hired. The record shows a private investigator was hired, helped Grider's trial counsel prepare for trial, and met with Grider to discuss possible leads. Grider's claim his trial counsel was ineffective for failing to hire a private investigator has no merit.

Twelfth, Grider argues his trial counsel failed to depose five unnamed people who would have testified to his roommates' drug use. Grider does not present any evidence as to how it would help his case to show he was living with drug users. Grider does not say who these five people are or whether they were willing to testify. We cannot say Grider's trial counsel was ineffective for failing to depose these five unnamed people. *See Dunbar*, 515 N.W.2d at 15.

Finally, Grider argues his trial counsel refused to depose five people whom Grider met in jail that had knowledge his roommates were informants. There is no evidence in the record who these five people are, how they knew his roommates were informants, or whether they would have testified favorably for Grider. *See id.* None of Grider's claims that his trial counsel was ineffective are persuasive.

Grider further claims in an amendment to his postconviction-relief application a hearing should have been held to address his request for new counsel in the underlying criminal case. The decision to grant a motion for substitute counsel is a matter within the trial court's discretion. *State v. Tejeda*, 677 N.W.2d 744, 749–50 (Iowa 2004). "Not every breakdown in communication is sufficient to warrant appointment of substitute counsel; a complete breakdown is

required." *White v. State*, No. 09-0859, 2010 WL 446975, at *3 (Iowa Ct. App. Feb. 10, 2010) "[T]o prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *Id.* (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)).

Here, during the time Grider's case was pending, he wrote numerous pro se motions and letters to the district court. In those letters, Grider alleged he was representing himself, his attorney had lied to him, and his "court appointed attorney is actually an agent working with you to find me guilty of a fictional crime." A hearing was held on his claims,[1] and Grider described his complaints to the district court. The court responded by explaining counsel's appropriate actions and denied the motion. Grider fails to state or argue the result of the trial would have been different had he been appointed substitute counsel. Without arguing how he was prejudiced by the district court's failure to appoint substitute counsel, we cannot say he was prejudiced. *See Tejeda v. State*, No. 06-1255, 2007 WL 2119175, at *2 (Iowa Ct. App. July 25, 2007) (finding the defendant was not prejudiced when he did not argue how the result of the trial would have been different with substitute counsel).

Because we find none of the claims the postconviction-relief court failed to explicitly address would have changed the outcome of Grider's postconviction-relief application, Grider was not prejudiced by his counsel's failure to file a rule

---

[1] The hearing took place after the jury trial.

1.904 motion. Grider's postconviction-relief counsel was not ineffective for failing to file a motion to amend or enlarge the findings of the postconviction-relief court.

Next, Grider argues his postconviction-relief attorney provided ineffective assistance of counsel by failing to argue potential constitutional issues. Grider does not specify what constitutional issues his counsel failed to argue, and we cannot make his argument for him. Mention of an issue without elaboration or supportive authority is not sufficient to raise the issue for review. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (stating "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for [reviewing court's] consideration").

We reject Grider's claims his postconviction-relief counsel's failure to file a motion to amend or enlarge prejudiced him, the court failed to address all of his issues, or that trial counsel was ineffective, and affirm the district court's dismissal of his application for postconviction relief.

**AFFIRMED.**