# IN THE COURT OF APPEALS OF IOWA

No. 23-0533
Filed April 10, 2024

**CHARLES SILA CURRY,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Boone County, Amy M. Moore,

Judge.

An applicant appeals the denial of postconviction relief. **AFFIRMED.**

Agnes G. Warutere of Warutere Law Firm, P.L.L.C., Ankeny, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee State.

Considered by Greer, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

Charles Sila Curry appeals the denial of his application for postconviction relief. He claims his trial attorney was ineffective for not moving to exclude eyewitness identifications and for having Curry stand for in-court identifications instead of sit. Because Curry has not proven counsel breached an essential duty or the reasonable probability of acquittal on his claims, we affirm.

## I.      Background Facts and Proceedings

On direct appeal, Curry challenged the sufficiency of the evidence. *State v. Curry*, No. 19-1524, 2020 WL 4207402, at *1–2 (Iowa Ct. App. Jul. 22, 2020). We affirmed, offering this summary of the facts and trial proceedings:

> Charles Curry shot Jordan Schroeder. The bullet grazed Schroeder's right thigh and went "clean through" his left leg. The bullet mushroomed as it tore through the flesh. When responding police officer Seth McCrea arrived on the scene he observed Schroeder was bleeding from both legs. Exposed fat and blood was coming from the wound on Schroeder's right thigh. Schroeder's left leg was bleeding at "a rather rapid rate." Officer McCrea testified there was a lot of blood, and he was concerned Schroeder's femoral artery had been damaged and Schroeder might bleed out. Officer McCrea applied tourniquets to both of Schroeder's legs. Medical personnel transported Schroeder to Boone County Hospital. There, it was determined that Schroeder needed more advanced care than was available in Boone. Schroeder was transported to a Des Moines hospital by a Life Flight helicopter.
> Schroeder received stitches in his right leg to close the two-to three-inch long, half-inch deep wound. He had to treat the wounds in his left leg with ointment and gauze to allow it to heal "from the inside." At trial he testified about the scars that remained; that as a result of being shot, his sleep was disrupted by nightmares; and that he had been isolating himself by staying indoors and avoiding people when in public.
> The State charged Curry with attempted murder and willful injury resulting in serious injury. A jury found Curry guilty of assault causing serious injury and of willful injury resulting in serious injury.

*Id.* at *1.

As pertinent to this appeal, Curry was identified as the shooter, directly or indirectly, by his accomplice Nathaniel Gilmore and three other eyewitnesses:

- Schroeder testified Curry shot him;
- Shelby Duehring, a Boone resident who lived near the park, identified Curry as the person she saw walking down the street with a white car following him; and
- Brittany Curtzwiler, who also lived nearby, identified Curry as the man she saw riding a bike while she was mowing her lawn.

These eyewitnesses used slightly different language to describe Curry's race. Schroeder thought Curry looked "Native American," even after seeing him at trial. Duehring described Curry as "black." And Curtzwiler described him as "African American." These eyewitnesses were cross-examined by Curry's trial counsel, who emphasized in closing argument that the identifications were unreliable.

Curry applied for postconviction relief with claims relating to the eyewitness identifications. Evidence before the district court included two depositions of trial counsel.[1] The court denied postconviction relief, and Curry appeals.

## II. Outside-the-Record Information

After this appeal was transferred to our court, we ordered the parties to file statements addressing a *Des Moines Register* article included in Curry's appendix and cited for a factual proposition in Curry's brief. We requested the parties state

---

[1] One of these depositions was filed as a four-panes-per-page condensed transcript. We recognize there were potential cost-savings with condensed transcripts in the paper era, but there is no cost to e-filing full-page transcripts, and condensed transcripts are prohibited under our rules. *See* Iowa R. App. P. 6.803(2)(f) (renumbered to 6.803(2)(e) after April 1, 2024). This requirement exists because condensed transcripts make our review more difficult and can hinder our mandate to dispose justly of a high volume of cases. *See* Iowa Ct. R. 21.11.

their positions on whether the article was part of the record on appeal as defined in Iowa Rule of Appellate Procedure 6.801 or otherwise appropriately considered by our court. Curry, through counsel, admitted the article was "not part of the record on appeal" but urged it was nonetheless permissible for us to consider as an authority, presumably under Rule 6.904(2)(d)(3) (renumbered to 6.904(2)(c)(3) as of Apr. 1, 2024). The State responded that the article was outside the record and the rules do not permit outside-the-record authorities to prove factual propositions.

Having considered the parties' statements, we find the *Des Moines Register* article is not part of the record on appeal and we do not consider it. *See In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded."). We condemn attempts to circumvent the rules of appellate procedure and improperly develop facts that must be properly litigated through the adversarial process. And we recognize that, as of April 1, 2024, an appendix will no longer be filed with appellate briefs. We trust the new requirement to cite directly to the district court record for material statements of fact will help prevent the use of facts outside the record. *See* Iowa R. App. P. 6.904(4) (effective Apr. 1, 2024). We remind Curry's appellate counsel to not inject outside-the-record factual material into an appellate brief in the future.

### III. Standard of Review

We review ineffective-assistance claims de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

**IV.     Discussion**

Curry alleges trial counsel was ineffective in two ways: first, in not seeking to exclude the eyewitness identifications; and second, in asking Curry to stand up when identified in court.[2]

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A postconviction applicant claiming ineffective assistance must prove both (1) counsel's performance fell below reasonable standards and (2) if counsel had acted differently, there would be a reasonable probability of a different outcome at trial. *Id.* at 687, 694; *see Sothman*, 967 N.W.2d 522–23. "The required examination should proceed while resisting, in the light of hindsight, the temptation to Monday morning quarterback the lawyer in the arena. Nor should the inquiry degenerate into a postmortem, microscopic dissection of each desperate effort of counsel to save a terminal case." *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980).

Curry first contends trial counsel was ineffective for not moving to exclude the eyewitness identifications. He complains generally about the possible

---

[2] The argument section of Curry's appellate brief includes one reference to trial counsel not calling an expert witness. But this claim is not meaningfully developed or discussed in the context of a breach-and-prejudice analysis, and we find it waived. *See* Iowa R. App. P. 6.903(2)(g)(3) (renumbered to 6.903(2)(a)(8)(3) as of Apr. 1, 2024). Even if the claim wasn't waived, we would reject it on the merits, as Curry has not proven what a hypothetical expert would have said. *See, e.g.*, *Nichol v. State*, 309 N.W.2d 468, 470 (Iowa 1981) ("Ordinarily complaints about failure to call witnesses should be accompanied by a showing their testimony would have been beneficial.").

difficulties of cross-racial identification and makes broad assertions based on social science about the alleged general unreliability of eyewitnesses. But Curry cites no controlling authority, and we are aware of none, that would have authorized the district court to exclude the eyewitnesses. In Iowa, "the jury, not the judge, traditionally determines the reliability of evidence." *State v. Doolin*, 942 N.W.2d 500, 509–11 (Iowa 2020) (citation omitted). And we permit in-court identifications that have an independent origin, like the ones made here. *See id.* at 508–16. To some extent, Curry seems to advocate for the legal position offered by the dissent in *Doolin*. But that dissent is not the law. The *Doolin* majority opinion controls, and "[w]e are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). Having identified no precedent that can achieve what Curry claims counsel should have done, we conclude he failed to demonstrate either prong of his *Strickland* claim.

While we are skeptical this argument is adequately briefed, Curry may maintain on appeal that the identifications were so suggestive they could be excluded under federal case law for violating due process. *See Neil v. Biggers*, 409 U.S. 188, 198–200 (1972) (listing relevant factors). To the extent Curry advances this claim, we agree with the postconviction court that any motion to exclude would have been meritless:

> In applying these [*Biggers*] factors to the witnesses' identifications, the court finds that any motion to exclude the identifications at trial would have been meritless. All three witnesses had ample opportunity to observe Mr. Curry. All three witnesses testified as to their reasons to be attentive. All three witnesses gave consistent descriptions of the suspect. The witnesses were certain in their identification of Mr. Curry during their testimony. While months had passed between the shooting and the trial, overall, the five factors weigh in favor of a finding of reliability.

This was also the assessment offered by trial counsel, who observed any problems with the identifications did not rise "to the level of a constitutional violation" but instead were "fact questions for the jury to decide." We conclude Curry proved neither prong of *Strickland* for a *Biggers* claim, to the extent he makes one.

Last, Curry contends counsel was ineffective for having Curry stand at trial during witness identifications. But trial counsel gave a rational explanation for this strategic decision when asked about it: "We have nothing to hide. We're going to show it wasn't me. It's an old trial strategy." Trial counsel further explained he used this strategy in "many" cases because "we know [the eyewitnesses] are going to do it anyway." He also clarified that the tactical decision was considered and based on pretrial developments: "This isn't random. We had discovery. We knew what these folks were going to say. None of them were going to say . . . that this wasn't the guy. So we have nothing to hide." We do not Monday-morning-quarterback defense counsel's reasonable strategic choices. *Hinkle*, 290 N.W.2d at 30. And there is no reasonable probability Curry would have been acquitted if he had remained seated instead of standing. This claim, like the others, fails.

**AFFIRMED.**